David HUNTER, Appellant/Cross–
Appellee,

v.

PRICEKUBECKA, PLLC,
Appellee/Cross–
Appellant,

and

Brian Price, Appellee.

No. 05–09–01397–CV.

Court of Appeals of Texas,
Dallas.

April 22, 2011.

---

Matthew Alan Sharp, Coury Matthews Jacocks, The Law Offices of Coury M. Jacocks, P.C., Dallas, TX, for Appellant/Cross–Appellee.

John T. Palter, Kimberky M.J. Sims, Riney Palter, PLLC, Dallas, TX, for Appellee/Cross–Appellant.

Before Justices O'NEILL, FITZGERALD, and LANG.

## OPINION

Opinion By Justice LANG.

In this case, we address issues arising out of the termination of an agreement (the "letter agreement") that provided for, *inter alia,* terms of David Hunter's employment with and his potential purchase of equity in PriceKubecka, PLLC ("PK"), an accounting firm. Appellant Hunter appeals from a take nothing judgment on his breach of contract and tort claims. Appellees PK and Brian Price (collectively, "appellees") assert a cross-issue respecting the take nothing judgment on PK's counterclaims and the trial court's denial of PK's motion for judgment notwithstanding the verdict.

In nine issues on appeal, Hunter contends the trial court erred by (1) instructing a verdict in favor of PK on Hunter's breach of contract claim, (2) not instructing a verdict in Hunter's favor on that claim, (3) refusing to submit Hunter's requested jury issues on his claims for breach of contract, fraud, and negligent misrepresentation, (4) denying Hunter's motion to modify the judgment, (5) granting appellees' motion for no-evidence summary judgment on Hunter's fraud and negligent misrepresentation claims, and (6) submitting PK's counterclaims to the jury. In a single issue on cross-appeal, appellees assert the trial court erred by denying PK's motion for judgment notwithstanding the verdict because the jury's findings pertaining to PK's counterclaims were not supported by the evidence.

Based on the analysis below, we decide against Hunter on his first, second, third, fifth, sixth, seventh, and ninth issues. We do not reach Hunter's fourth and eighth issues. Additionally, we decide against appellees on their cross-issue. The trial court's judgment is affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 13, 2004, Hunter and PK entered into a letter agreement that provided for Hunter's employment with PK as "Director of Practice Development" and for terms of a possible purchase by Hunter of equity in PK. In a section of the letter agreement titled "Compensation," there were two subsections. Subsection one of the "Compensation" section, titled "Equity," provided

a. An amount equal to 20% of the ownership interest in PriceKubecka shall be transferred to David Hunter on December 31, 2005. Total payment for a 20% equity interest in PK is $277,564 and will be paid in two ways:

b. Clients formerly serviced by [Hunter's previous employer] that are transferred to PK will be applied to the payment of equity. Valuation of these clients will be based on the total fees charged within the first twelve months after the new services are commenced at PK. Clients that do not continue with PK for at least 12 months will not be counted.

c. Any amount leftover after applying the payment from transferred clients will be paid for by applying the 10% equity commission outlined below until the full $277,564 has been reached.

Under subsection two of the "Compensation" section, titled "Commission," the letter agreement provided that, in addition to a base salary, Hunter would be paid a commission for new business generated by his efforts in the amount of 17.5% of each new client's total billings. Additionally, part (c) of that subsection stated, "Clients that leave prior to the first twelve months will have the commission calculated as 17.5% of total billings and the excess paid will be charged back against future compensation."

In another section, titled "Termination of relationship," the letter agreement stated in part

a. If the relationship between Hunter & PK terminates prior to the equity funding date of 12/31/05, all clients brought over from [Hunter's previous employer] will remain the property of Hunter. PK will assist in the transition of clients to Hunter or pay 1 times the most immediate twelve months of billings, whichever Hunter chooses.

b. All clients developed from Hunter's marketing efforts while employed by PK will remain the property of PK. Hunter agrees not to solicite [sic] those clients or agrees to purchase them at 1 times the most immediate twelve months of billings.

In his suit filed on December 7, 2007, Hunter asserted in relevant part that Price, on behalf of PK, terminated the letter agreement in writing on December 9, 2005. According to Hunter, PK owed him the "equity payment" of $277,564 described in the letter agreement and "an amount equal to the most immediate twelve (12) months' of billing" for clients transferred by Hunter to PK. Hunter asserted, *inter alia*, (1) claims against both defendants for common law fraud and negligent misrepresentation, (2) a breach of contract claim against PK, and (3) a claim against Price for tortious interference with a contract.

PK and Price filed general denial answers and PK filed counterclaims for

breach of contract and money had and received. PK claimed Hunter breached the letter agreement in several respects not relevant to our analysis. With respect to the claim for money had and received, PK contended it had overpaid commissions to Hunter in the amount of "at least $50,000." Therefore, PK alleged, Hunter held money that, "in equity and conscience," belonged to PK and should be returned. In response, Hunter contended such counterclaims were barred in whole or part by PK's unclean hands and affirmative defenses including laches, equitable estoppel, waiver, and voluntary payment.

In response to appellees' motion for no-evidence summary judgment as to all of Hunter's claims, Hunter argued the evidence relied upon by him consisted of (1) the pleadings and (2) an affidavit made by him and the exhibits attached thereto. The trial court granted summary judgment in part, determining that Hunter take nothing on his claims for fraud and negligent misrepresentation. Summary judgment was denied as to Hunter's claims for breach of contract and tortious interference with a contract.

The trial court granted appellees' motion for directed verdict on Hunter's claims for breach of contract and tortious interference with a contract. Then, four questions were submitted to the jury, all pertaining to PK's claims for breach of contract and money had and received. In question number one of the jury charge, the jury was asked, "Did David Hunter fail to comply with the [letter agreement] dated June 13, 2004 between David Hunter and Price-Kubecka?" The jury's answer to question number one was "no." Question number three of the jury charge asked, "Does David Hunter hold money, that in equity and good conscience, belongs to PriceKubecka?" The jury answered "no" to question number three.[1]

The trial court denied PK's motion for judgment notwithstanding the verdict, whereby PK requested the answers to the questions submitted to the jury be disregarded and judgment be rendered that it recover the "overpaid commissions." The final judgment ordered that Hunter and PK recover nothing on their claims.

PK filed a motion for new trial and Hunter filed a "Motion to Modify the Judgment." In his motion, Hunter requested the trial court "reverse its prior decision to direct a verdict in favor of Defendant PriceKubecka on Plaintiff's claim for breach of contract, and direct its verdict in favor of Plaintiff and against Defendant PriceKubecka on Plaintiff's claim for breach of contract." Specifically, Hunter raised for the first time the contention that PK breached the letter agreement at the time of termination on December 9, 2005, because PK's "notification" to Hunter at that time that PK "would purchase [the transferred clients] for the sum of only $153,272.00, $43,728.00 or 22.2% less than the amount obligated under the agreement," was "an absolute and unequivocal refusal by [PK] to perform under the agreement." Hunter requested that the trial court (1) deny PK's motion for new trial, (2) modify the judgment, and (3) grant Hunter "such other and further relief to which he may be justly entitled."[2]

The trial court heard and denied both motions. Timely notices of appeal were filed by both sides.

---

1. Based on those answers and pursuant to the instructions in the jury charge, the jury did not answer questions two and four.

2. Hunter's motion to modify the judgment did not address the trial court's directed verdict on Hunter's claim against Price for tortious interference with a contract, and Hunter does not assert error on appeal as to the disposition of that claim.

## II. PRESERVATION OF ERROR BY HUNTER

As a threshold matter, we begin with appellees' contention that Hunter "failed to preserve any alleged error" on appeal "by failing to object to the proposed instructions and questions submitted in the Charge and by not requesting, and indeed objecting to a new trial." According to appellees, following the trial court's granting of a directed verdict in their favor, Hunter did not properly object to the trial court's omission of his proposed questions and instructions from the jury charge or, to the extent a proper objection was made, obtain a ruling on any such objection. Further, appellees assert Hunter "takes an inconsistent position" on appeal by "requesting a new trial after affirming to the Trial Court that he did not want one."

■ In support of their argument respecting the jury charge, appellees cite Texas Rule of Civil Procedure 279 for the proposition that "[a] party waives an entire theory of recovery or defense by not objecting to its omission from the charge." *See* TEX.R. CIV. P. 279. However, rule 279 does not apply where a claim has been disposed of by directed verdict. *See*

*Sturm v. Muens,* 224 S.W.3d 758, 764 (Tex. App.-Houston [14th Dist.] 2007, no pet.) ("failure to request a jury submission does not waive a claim that the trial court has already disposed of as a matter of law, such as by granting a directed verdict"); *Allison v. Parks,* 763 S.W.2d 606, 607 (Tex. App.-Fort Worth 1989, writ denied) ("A party waives a ground of recovery by failing to request its submission to the jury unless it is established as a matter of law.").

Further, even assuming, without deciding, that Hunter stated in the trial court that he "did not want a new trial" on his claims, appellees cite no authority, and we have found none, to support their contention that, as a result, Hunter has "waived any alleged error" on appeal. *See* TEX. R.APP. P. 38.2(a)(1) (appellee's brief must contain appropriate citation to authorities). We cannot agree with appellees that Hunter has "failed to preserve any alleged error" on appeal.[3]

## III. HUNTER'S BREACH OF CONTRACT CLAIM

Next, we address together Hunter's first, third, fifth, and sixth issues, which pertain to Hunter's breach of contract claim.[4]

---

3. Consequently, we need not address Hunter's fourth issue, in which he asserts that his motion to modify the judgment preserved the errors alleged by appellees to have been waived.

4. Those issues on appeal read as follows:

ISSUE ONE: Whether the trial court erred by instructing [a] verdict in favor of PK on the issue of Hunter's claim for breach of contract because the evidence was sufficient to raise a genuine fact issue on the elements of Hunter's cause of action?
. . . .
ISSUE THREE: Whether Price's offer of performance, i.e. Plaintiff's Exhibit No. 3, which omitted any accounting or valuation for one-third of the clients obligated, and offered to perform over a period of 36 months, is a material breach as a matter of law?
. . . .
ISSUE FIVE: Whether the trial court erred by not instructing [a] verdict in Hunter's favor on his cause of action for breach of contract as the evidence presented at trial conclusively established Hunter's claim and entitlement to judgment against PriceKubecka?
ISSUE SIX: The trial court abused its discretion by denying Hunter's motion to modify the judgment because Hunter's motion was sufficient to apprise the trial court of its earlier error and requested no more relief than [ ] to which Hunter had shown his entitlement?"

### A. Directed Verdict

#### 1. Standard of Review

In reviewing the grant or denial of a directed verdict, an appellate court follows the standards for assessing the legal sufficiency of the evidence. *Mauricio v. Castro*, 287 S.W.3d 476, 478 (Tex.App.-Dallas 2009, no pet.); *see City of Keller v. Wilson*, 168 S.W.3d 802, 821–28 (Tex.2005). We must determine whether there is any evidence of probative force to raise a fact issue on the question presented. *Bostrom Seating, Inc. v. Crane Carrier Co.*, 140 S.W.3d 681, 684 (Tex.2004); *Solares v. Solares*, 232 S.W.3d 873, 883 (Tex.App.-Dallas 2007, no pet.). We credit the favorable evidence if reasonable jurors could and disregard the contrary evidence unless reasonable jurors could not. *City of Keller*, 168 S.W.3d at 827. A directed verdict is proper if a party "fails to present evidence raising a fact issue essential to [its] right of recovery," or if a party "admits or the evidence conclusively establishes a defense to [its] cause of action." *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex.2000). The reviewing court may affirm a directed verdict even if the trial court's rationale for granting the directed verdict is erroneous, provided the directed verdict can be supported on another basis. *Exxon Corp. v. Breezevale Ltd.*, 82 S.W.3d 429, 443 (Tex. App.-Dallas 2002, pet. denied).

#### 2. Applicable Law

 To prove a claim for breach of contract, a plaintiff must establish (1) the existence of a valid contract between plaintiff and defendant, (2) the plaintiff's performance or tender of performance, (3) the defendant's breach of the contract, and (4) the plaintiff's damage as a result of the breach. *Hackberry Creek Country Club, Inc. v. Hackberry Creek Home Owners Ass'n*, 205 S.W.3d 46, 55 (Tex.App.-Dallas 2006, pet. denied). A repudiation or antici-patory breach occurs when a party's conduct "shows a fixed intention to abandon, renounce, and refuse to perform the contract." *SAVA gumarska in kemijska industria d.d. v. Advanced Polymer Sci., Inc.*, 128 S.W.3d 304, 315 (Tex.App.-Dallas 2004, no pet.); *Grp. Life & Health Ins. Co. v. Turner*, 620 S.W.2d 670, 673 (Tex.Civ. App.-Dallas 1981, no writ). The repudiation must be absolute and unconditional. *Bans Props., L.L.C. v. Hous. Auth. of City of Odessa*, 327 S.W.3d 310, 315 (Tex.App.-Eastland 2010, no pet.); *El Paso Prod. Co. v. Valence Operating Co.*, 112 S.W.3d 616, 621 (Tex.App.-Houston [1st Dist.] 2003, pet. denied).

#### 3. Application of Law to Facts

In his first, third, and fifth issues, Hunter contends the trial court erred by directing a verdict in favor of PK on Hunter's claim for breach of contract because the evidence shows that upon termination, but prior to Hunter's election to take the transferred clients, PK committed a material breach by refusing to perform under the letter agreement. Specifically, Hunter asserts that at the time the letter agreement was terminated, PK "notified" Hunter that it would purchase the clients transferred to PK by Hunter for the sum of $153,272, which Hunter contends was $44,502.41 less than the amount owed under the letter agreement. According to Hunter, such "notification" was a refusal by PK to perform under the letter agreement. Further, Hunter asserts a second material breach was committed by PK at the same time because PK refused to tender such payment within a reasonable time period. In light of such breaches by PK, Hunter argues, his subsequent election to take the transferred clients is "not controlling." Additionally, Hunter contends the trial court should have directed a verdict in his favor on his claim for breach of contract because the same evidence was

"legally conclusive" as to a material breach by PK.

■ Appellees assert that upon termination of the letter agreement, Hunter elected to take the clients transferred by him, an alternative available to Hunter under the terms of the letter agreement. Therefore, appellees contend, PK did not breach the letter agreement by not paying Hunter for those clients. Appellees argue the trial court correctly directed a verdict in favor of PK on Hunter's breach of contract claim. Further, appellees assert that "[b]ecause there was no fact issue to submit to the jury on [Hunter's] breach of contract claim, there is no support for [Hunter's] contention that the Trial Court erred by failing to direct verdict for [Hunter]." [5]

■ The operative evidence in the record respecting the termination of the letter agreement shows that at the time PK terminated the contract, Price gave Hunter a document prepared by Price entitled "PriceKubecka and David Hunter Settlement Agreement" (the "settlement agreement"). That one-page document contained a "client analysis" and stated a "calculation of settlement amount" of $153,272. Next to that figure was the number "36," which Price testified indicated his intent to pay the settlement amount over thirty-six months.

Hunter cites no evidence in the record, and we have found none, that PK's conduct, i.e., giving Hunter the settlement agreement, showed "a fixed intention to abandon, renounce, and refuse to perform the contract." *See SAVA gumarska in kemijska industria d.d.*, 128 S.W.3d at 315; *Grp. Life & Health Ins. Co.*, 620 S.W.2d at 673. Rather, Hunter referred

to the settlement agreement as an "offer" in his testimony at trial. There is no evidence Hunter told Price at the time of termination that the settlement agreement was not acceptable to him. Further, during oral submission before this Court, Hunter's counsel was asked, with respect to the settlement agreement, "It wasn't a take-it or leave-it? It was an offer?" Hunter's counsel responded, "Yes. And it's—to clarify, it's our position that offer was an unequivocal refusal to perform." We cannot conclude the record reflects any evidence of a repudiation by PK. *See SAVA gumarska in kemijska industria d.d.*, 128 S.W.3d at 315; *Grp. Life & Health Ins. Co.*, 620 S.W.2d at 673; *see also Bans Props., L.L.C.*, 327 S.W.3d at 315; *El Paso Prod. Co.*, 112 S.W.3d at 621.

On this record, we conclude the trial court did not err by granting a directed verdict in favor of PK and against Hunter on Hunter's breach of contract claim. *See Prudential Ins. Co. of Am.*, 29 S.W.3d at 77 (directed verdict proper where party "fails to present evidence raising a fact issue essential to [its] right of recovery"). Further, in light of that conclusion, we conclude the trial court did not err by not directing a verdict in favor of Hunter on that claim. *Id.* We decide against Hunter on his first, third, and fifth issues.

### B. *Motion to Modify the Judgment*

In his sixth issue, Hunter complains of the trial court's denial of his motion to modify the judgment. In that motion, Hunter asserted the trial court erred by (1) directing a verdict in favor of PK on Hunter's breach of contract claim and (2)

---

5. Additionally, appellees assert in a footnote in their reply brief on appeal that because Hunter did not "make a motion" for directed verdict in the trial court, "he cannot complain on appeal that the Trial Court erred in not granting a motion not before the Court." However, we do not consider arguments raised for the first time in a reply brief. *See Dallas Cnty. v. Gonzales*, 183 S.W.3d 94, 104 (Tex.App.-Dallas 2006, pet. denied).

not directing a verdict in favor of Hunter on that claim.

We review the denial of a motion to modify a judgment for an abuse of discretion. *Wagner v. Edlund*, 229 S.W.3d 870, 879 (Tex.App.-Dallas 2007, pet. denied). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner, or if it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). In light of our conclusions above respecting Hunter's breach of contract claim, we conclude the trial court did not err by denying Hunter's motion to modify the judgment. We decide against Hunter on his sixth issue.

## IV. SUMMARY JUDGMENT ON FRAUD AND NEGLIGENT MIS-REPRESENTATION CLAIMS

In his seventh issue, Hunter contends the trial court erred by granting appellees' motion for no-evidence summary judgment on Hunter's fraud and negligent misrepresentation claims because Hunter "produced more than a scintilla of competent summary judgment evidence in response on each element."

### A. Standard of Review

After adequate time for discovery, a party without the burden of proof at trial may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense. *See* Tex.R. Civ. P. 166a(i). We review the granting of a motion for no-evidence summary judgment under the same legal sufficiency standard used to review a directed verdict. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex.2003); *Ogg v. Dillard's, Inc.*, 239 S.W.3d 409, 416 (Tex.App.-Dallas 2007, pet. denied). Our inquiry focuses on whether the nonmovant produced more than a scintilla of probative evidence to raise a fact issue on the challenged elements. *King Ranch, Inc.*, 118 S.W.3d at 751. Evidence is no more than a scintilla if it is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *Id.* Where, as here, the trial court's order granting summary judgment does not specify the grounds upon which it was granted, we will affirm the judgment if any of the theories advanced are meritorious. *See Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex.2003); *Kastner v. Jenkens & Gilchrist, P.C.*, 231 S.W.3d 571, 577 (Tex.App.-Dallas 2007, no pet.).

### B. Applicable Law

To prevail on a negligent misrepresentation claim, a plaintiff must show (1) the representation in question was made by the defendant in the course of his business or in a transaction in which he had a pecuniary interest, (2) the defendant supplied false information for the guidance of others in their business, (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information, and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991); *see also Roof Sys., Inc. v. Johns Manville Corp.*, 130 S.W.3d 430, 439 (Tex. App.-Houston [14th Dist.] 2004, no pet.) ("The 'false information' contemplated in a negligent misrepresentation case is a misstatement of existing fact, not a promise of future conduct.").

To prevail in a cause of action for fraud, one must provide sufficient evidence of the elements of fraud, which are (1) a material misrepresentation was made; (2) it was false; (3) when the representation was made, the speaker knew it was false or the statement was recklessly asserted without any knowledge of its truth; (4) the

speaker made the false representation with the intent that it be acted on by the other party; (5) the other party acted in reliance on the misrepresentation; and (6) the party suffered injury as a result. *Taylor Elec. Servs., Inc. v. Armstrong Elec. Supply Co.*, 167 S.W.3d 522, 526 (Tex.App.-Fort Worth 2005, no pet.) (citing *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 688 (Tex.1990)); *see Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 921 (Tex.2010).

■■■■ A promise to do an act in the future is actionable fraud when made with the intention, design and purpose of deceiving, and with no intention of performing the act. *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex.1986). While a party's intent is determined at the time the party made the representation, it may be inferred from the party's subsequent acts after the representation is made. *Id.* Failure to perform, standing alone, is no evidence of the promissor's intent not to perform when the promise was made. *Id.* at 435. However, that fact is a circumstance to be considered with other facts to establish intent. *Id.* Since intent to defraud is not susceptible to direct proof, it invariably must be proven by circumstantial evidence. *Id.* " 'Slight circumstantial evidence of fraud,' when considered with the breach of promise to perform, is sufficient to support a finding of fraudulent intent." *Id.* (quoting *Maulding v. Niemeyer*, 241 S.W.2d 733, 738 (Tex.Civ. App.-El Paso 1951, orig. proceeding)).

### C. Application of Law to Facts

Hunter contends PK made the following "false promises of future performance which induced Hunter to enter in to the [letter agreement]": (1) to "transfer to Hunter an amount equal to a twenty percent (20%) equity interest in [PK]" on December 31, 2005, and (2) upon termination of the letter agreement, to purchase the clients transferred to PK by Hunter at a rate of twelve months' "billables" or assist with the transfer of such clients should Hunter elect to retain them. According to Hunter, it is not disputed that "said sums of compensation have not been paid" and PK did not assist with the transfer of any clients after Hunter's termination. Hunter argues those facts were established by his summary judgment evidence and constituted more than a scintilla of evidence in support of the "falsity" element challenged by appellees in their motion for no-evidence summary judgment. In support of his argument, Hunter cites *Taylor* for the proposition that "[s]light circumstantial evidence of fraud, when considered with the breach of a promise to perform, is enough to find intent not to perform."

Appellees argue that "[t]o prove a false promise of future performance, a plaintiff must establish that the defendant made a promise with no intention of performing it." They contend no evidence supports Hunter's contention that PK did not intend to perform at the time the letter agreement was executed. Therefore, appellees assert, the trial court's grant of no-evidence summary judgment should be affirmed.

■■■■ With respect to Hunter's claim for negligent misrepresentation, Hunter cites no evidence to support his contentions other than failure to perform. He does not explain or cite authority to show how PK's alleged "false promises of future performance" can support such claim. *See Roof Sys., Inc.*, 130 S.W.3d at 439 ("The 'false information' contemplated in a negligent misrepresentation case is a misstatement of existing fact, not a promise of future conduct."). Moreover, the law is clear with respect to both claims that, "[f]ailure to perform, standing alone, is no evidence of the promissor's intent not to perform when the promise was made."

*Spoljaric,* 708 S.W.2d at 435. We cannot agree with Hunter's assertion that the alleged failure to perform described above constitutes more than a scintilla of evidence that PK's representations were false. *Cf. Taylor,* 167 S.W.3d at 526 (evidence that defendant represented to plaintiff that it could deliver supplies by certain date, knowing such representation was against company policy, was sufficient to support finding of fraudulent intent). We decide against Hunter on his seventh issue.

## V. SUBMISSION OF HUNTER'S REQUESTED JURY ISSUES

In his second and ninth issues, Hunter asserts the trial court erred by refusing to submit his requested jury issues on his claims for breach of contract, fraud, and negligent misrepresentation because (1) each claim was supported by both written pleading and the evidence at trial and (2) those requests were reasonably necessary to enable the jury to render a proper verdict. As stated above, appellees assert broadly that Hunter waived error as to the submission of his specific questions and instructions. However, in addressing these issues, we assume, without deciding, that Hunter's above-described issues were properly preserved.

 We concluded above that Hunter's claims for breach of contract, fraud, and negligent misrepresentation were each properly decided as a matter of law by the trial court. Therefore, the trial court did not err by not submitting those issues to the jury.[6] We decide Hunter's second and ninth issues against him.

6. "[W]hen an issue is established as a matter of law, it is not an issue for the jury to decide and the trial court should not submit it to the jury." *Univ. of Houston–Clear Lake v. Marsh,* 981 S.W.2d 912, 915 (Tex. App.-Houston [1st Dist.] 1998, no pet.) (citing *T.O. Stanley Boot*

## VI. APPELLEES' COMPLAINTS ABOUT JURY'S FINDINGS

Now, we consider appellees' cross-issue. Appellees contend the findings by the jury in questions number one and number three of the jury charge were "erroneous and legally insufficient" because the uncontroverted evidence conclusively established that PK overpaid Hunter commissions in the amount of $40,330.45. Therefore, appellees argue, the trial court should have granted PK's motion for judgment notwithstanding the verdict and entered judgment in favor of PK and against Hunter in the amount of $40,330.45.

Hunter responds that (1) in the trial court, PK did not seek return of the commissions at issue under a breach of contract theory, and thus has not preserved that issue on appeal; (2) as a matter of law, the letter agreement did not require Hunter to return such commissions; and (3) more than a scintilla of evidence exists to support the jury's finding that Hunter does not, in equity and good conscience, hold money that belongs to PK.

### A. Standard of Review

 A judgment notwithstanding the verdict is proper when (1) the evidence is conclusive and one party is entitled to judgment as a matter of law or (2) a legal principle precludes recovery. *Sheehan v. Adams,* 320 S.W.3d 890, 895 (Tex.App.-Dallas 2010, no pet.) (citing *Tiller v. McLure,* 121 S.W.3d 709, 713 (Tex.2003) (per curiam)); *see* TEX.R. CIV. P. 301. We review a party's challenge to the trial court's grant or denial of a motion for judgment notwithstanding the verdict un-

*Co., Inc. v. Bank of El Paso,* 847 S.W.2d 218, 222–23 (Tex.1992)); *see also In re Bledsoe,* 41 S.W.3d 807, 813 (Tex.App.-Fort Worth 2001, orig. proceeding) ("Absent evidence warranting submission of an issue to the jury, the issue cannot be submitted.").

der the standard for legal sufficiency. *See City of Keller*, 168 S.W.3d at 823.

When a party challenges the legal sufficiency of an adverse finding on which he had the burden of proof, he must demonstrate on appeal that the evidence conclusively established the facts in his favor as a matter of law. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex.2001) (per curiam); *Johnson v. Kindred*, 285 S.W.3d 895, 898 (Tex.App.-Dallas 2009, no pet.). We first examine the record for evidence to support the finding. *Dow Chem. Co.*, 46 S.W.3d at 241. If there is no evidence to support the finding, we then examine the entire record to determine if the contrary position is established as a matter of law. *Id.* We indulge every reasonable inference to support the judgment, crediting favorable evidence if a reasonable fact-finder could and disregarding contrary evidence unless a reasonable fact-finder could not. *City of Keller*, 168 S.W.3d at 807, 822.

■ When no objection is made to the language of the jury charge, the sufficiency of the evidence is measured against the commonly understood meaning of the words in the charge. *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex.2000); *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 869 (Tex. App.-Dallas 2008, no pet.).

### B. Applicable Law

As described above, a plaintiff alleging breach of contract has the burden to prove the defendant's breach of the contract. *See Hackberry Creek Country Club, Inc.*, 205 S.W.3d at 55.

■ To recover on a claim for money had and received, a plaintiff must show that the defendant holds money that in equity and good conscience belongs to him. *Staats v. Miller*, 150 Tex. 581, 243 S.W.2d 686, 687 (Tex.1951); *Edwards v. Mid–Continent Office Distribs., L.P.*, 252 S.W.3d 833, 837 (Tex.App.-Dallas 2008, pet. denied). A cause of action for money had and received is not based on wrongdoing, but, instead, "looks only to the justice of the case and inquires whether the defendant has received money which rightfully belongs to another." *Everett v. TK–Taito, L.L.C.*, 178 S.W.3d 844, 860 (Tex.App.-Fort Worth 2005, no pet.); *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex.App.-El Paso 1997, no writ). In short, it is an equitable doctrine applied to prevent unjust enrichment. *Hunt v. Baldwin*, 68 S.W.3d 117, 132 (Tex.App.-Houston [14th Dist.] 2001, no pet.); *Phippen v. Deere & Co.*, 965 S.W.2d 713, 725 (Tex.App.-Texarkana 1998, no pet.). In defending against such a claim, a defendant may present any facts and raise any defenses that would deny the claimant's right or show that the claimant should not recover. *Best Buy Co. v. Barrera*, 248 S.W.3d 160, 162 (Tex.2007).

### C. Application of Law to Facts

■ First, appellees contend the evidence is legally insufficient to support the jury's answer to question number one of the jury charge, in which the jury found Hunter did not "fail to comply" with the letter agreement. Assuming, without deciding, that PK's breach of contract claim based on overpayment of commissions was properly raised below, we cannot agree with appellees' contentions. The record shows PK and Hunter agreed to a system of payment in which Hunter was paid based on estimates of future client billings. Appellees contend that because it was conclusively established that PK overpaid Hunter, Hunter breached subsection two, part (c), of the "Compensation" section of the letter agreement. That provision stated, "Clients that leave prior to the first twelve months will have the commission calculated as 17.5% of total billings and the excess paid will be charged back against future compensation." However, based on the language of the letter agreement, the jury reasonably could have found that once

PK terminated the letter agreement, there was no "future compensation" against which to charge back overpayments to Hunter. The letter agreement does not otherwise provide for any payment by Hunter respecting excess commissions. We conclude there is some evidence to support the jury's finding in question number one.

Second, appellees challenge the legal sufficiency of the evidence to support the jury's finding in question number three that Hunter does not hold money that "in equity and good conscience" belongs to PK. Appellees assert "the testimony and documentary evidence of the amount of overpayment was uncontradicted and was so clear, direct and positive so as to establish [PK]'s entitlement to return of the overpayment as a matter of law." According to appellees, "[t]o avoid repayment of his clearly established obligation, [Hunter] moved the jury to rely on sympathy and prejudice in not awarding the amounts due to [PK]."

The jury charge provided no instruction defining the terms "equity" or "good conscience," and the record shows no objection by appellees to the lack of such definitions. Further, the general instructions in the charge stated in relevant part, "When words are used in this charge in a sense that varies from the meaning commonly understood, you are given a proper legal definition, which you are bound to accept in place of any other meaning." Thus, the jury was entitled to apply the commonly understood meaning of "equity" and "good conscience" in considering question number three. *See Osterberg*, 12 S.W.3d at 55; *EMC Mortg. Corp.*, 252 S.W.3d at 869. The common meaning of "equity" is "fairness; impartiality; justice." WEBSTER'S NEW WORLD COLLEGE DICTIONARY 481 (4th Ed. 2001). "Conscience" is defined as "a knowledge or sense of right and wrong, with an urge to do right." *Id.* at 309–10;

*cf. Best Buy Co.*, 248 S.W.3d at 162 (in class action suit involving determination of money had and received issue based on "equity and good conscience," evidence of individual class members' knowledge and understanding about disputed charges was relevant).

■ The record shows that in a letter to an attorney for Hunter dated January 19, 2006, an attorney for appellees purported to state "[t]he facts about the relationship" between Hunter and PK. While that letter stated that some commissions paid to Hunter "were charged back," that letter made no request or demand for return of overpaid commissions. Further, as described above, the letter agreement made no specific provision for return of overpaid commissions upon termination. Hunter testified that the first time he became aware that PK was seeking a return of the overpaid commissions at issue was in October 2008, well after the suit was filed on December 7, 2007. During closing argument, counsel for Hunter read question number three to the jury, then stated

This overpayment that they want you to assess against [Hunter], keep in mind, when [Hunter] was terminated, was there any reference of overpayment, whether it be in any of the letters that [Price] was—so artfully lets his lawyers write, whether it be the termination letter, whether it be the [January 19, 2006 attorney letter]? There is no hint of overpayment. It's not mentioned. We conducted the pre-suit. It's not mentioned.

This overpayment didn't come about until I believe October of last year. So 30 months it's nowhere to be found. They are not standing up, no, no, you pay us back. Where is this the whole time when we are prosecuting our claim against them to get what [Hunter] was owed under the contract, and yet, no, no,

we overpaid you, we are going to countersue you, where—it didn't come out until the very end.

On this record, we conclude some evidence supports the jury's finding in question number three of the charge that the commissions at issue did not "in equity and good conscience" belong to PK.

We conclude the trial court did not err by denying PK's motion for judgment notwithstanding the verdict. *See Sheehan*, 320 S.W.3d at 895. We decide appellees' cross-issue against them. In light of our disposition of appellees' cross-issue, we need not address Hunter's eighth issue, in which he asserts error as to the submission of PK's counterclaims to the jury.

## VII. CONCLUSION

We conclude the trial court did not err by (1) directing a verdict in favor of PK on Hunter's breach of contract claim, (2) not directing a verdict in Hunter's favor on that claim, (3) not submitting Hunter's requested jury questions and instructions as to his claims for breach of contract, fraud, and negligent misrepresentation, (4) denying Hunter's motion to modify the judgment, (5) granting appellees' motion for no-evidence summary judgment on Hunter's fraud and negligent misrepresentation claims, or (6) denying PK's motion for judgment notwithstanding the verdict. We decide against Hunter on his first, second, third, fifth, sixth, seventh, and ninth issues. We do not reach Hunter's fourth and eighth issues. Further, we decide appellees' cross-issue against them.

The trial court's judgment is affirmed.