**Opinion issued November 15, 2012**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-11-00824-CV

————————————

## COMMISSION FOR LAWYER DISCIPLINE, Appellant

## V.

## CLARISSA GUAJARDO, Appellee

On Appeal from the 270th District Court
Harris County, Texas
Trial Court Case No. 2010-74657

## MEMORANDUM OPINION

The Commission for Lawyer Discipline filed a disciplinary action against Clarissa Guajardo. After the Commission rested during the jury trial, Guajardo moved for a directed verdict, which the trial court granted. On appeal, the

Commission argues that the trial court erred because there was sufficient evidence to show that Guajardo violated the Texas Disciplinary Rules of Professional Conduct by (1) not refunding money to a client after she was not able to pursue an action she had initiated, (2) applying that money to other fees incurred by the client in a separate matter, and (3) charging a nonrefundable retainer without proof that she met the requirements to charge such a retainer.

We affirm.

## Background

Maurice Khan was engaged to Laura Gonzalez Ramirez some time in 2008. Ramirez lived in Mexico, while Khan lived in Louisiana. In early August 2008, Ramirez flew from Mexico to Houston, Texas with plans to marry Khan while in the United States. She was detained at the airport by law enforcement officials. After about 10 hours of questioning, the law enforcement officials sent her back on a flight to Mexico.

Shortly thereafter, Khan contacted Guajardo, an attorney practicing immigration law, seeking representation to get his fiancée back to the United States. Guajardo agreed to represent Khan and Ramirez on condition of payment of $5,355, which Khan immediately wire transferred to Guajardo. No formal contract was ever drafted. Other than invoices for costs and attorney's fees, all agreements between the parties were oral.

2

Guajardo then began filing certain forms with the Department of Justice and the Department of State, seeking permission for Ramirez to enter the state. She worked with Kahn and Ramirez to collect the necessary documents to include with the filed forms. She also filed a freedom of information request, seeking information relevant to Ramirez's interrogation while at the airport in Houston.

Around late September 2008, Guajardo decided to file a writ of habeas corpus in federal court in the District of Columbia. The purpose of the writ was to seek a declaration that certain statements made by Ramirez during her interrogation were made under duress. The effect of the writ, if successful, would have been to prevent Ramirez's prior statements from having a negative effect on the determinations she was seeking in her other filings.

Guajardo was not licensed to practice in the District of Columbia. In order to appear pro hac vice for the writ, Guajardo was required to obtain local counsel. Guajardo attempted to find local counsel but was ultimately unsuccessful. As a result, the filing was rejected.

Around the time the writ was filed, a paralegal for Guajardo notified Kahn that the writ was being filed; that additional attorney's fees and costs, totaling $2,450, had been incurred; and that Kahn would be invoiced for the amount. Before an invoice was sent, Kahn sent Guajardo a check for that amount. After the writ had been rejected, Guajardo withdrew the costs and attorney's fees incurred in

3

preparing and filing the writ and applied the money Kahn sent her to other costs incurred on the case.

On October 24, 2008, Guajardo sent Kahn an invoice for work she had done. The invoice did not list the costs and fees related to the writ. It applied the money that Kahn had sent to other costs and fees incurred and identified a balance due of $4,135. Kahn paid this remaining amount.

About one year later, on October 8, 2009, Kahn terminated Guajardo's representation. His termination letter sought the return of his file and return of "$9,000 of unearned attorney['s] fees." Kahn threatened to file a complaint with the State Bar of Texas if the money was not returned. Guajardo did not return any money, and Kahn filed a complaint.

A few months after Kahn terminated representation, some of the forms filed by Guajardo were approved, and Ramirez was allowed entry into the United States.

In its original petition, the Commission alleged three violations of the Texas Disciplinary Rules of Professional Conduct: (1) failing to keep the client reasonably informed about the status of a matter; (2) failing to keeps funds belonging to a client separate from her own funds; and (3) failing to refund advanced unearned payments of attorney's fees upon the termination of representation. Before trial, however, the Commission amended its petition to

4

allege only one violation: failing to refund advanced unearned payments of attorney's fees upon the termination of representation.

At trial, the Commission argued that Guajardo's representation of Kahn and Ramirez in filing the writ was separate from her representation of Kahn with respect to the other documents filed on Kahn and Ramirez's behalf. As a result, the Commission argued, Guajardo lacked the authority to apply the costs incurred in preparing and filing the writ to the remainder of Guajardo's representation of Kahn and Ramirez.

At the close of the Commission's case in chief, Guajardo moved for a directed verdict. She argued that the Commission had failed to establish that Guajardo had any unearned fees to be returned to her client. The trial court granted the motion.

## Standard of Review

When reviewing the grant of a directed verdict, we follow the usual standard for assessing the legal sufficiency of the evidence. *See Hunter v. PriceKubecka, PLLC,* 339 S.W.3d 795, 802 (Tex. App.—Dallas 2011, no pet.) (citing *City of Keller v. Wilson,* 168 S.W.3d 802, 821–28 (Tex. 2005)). We examine the evidence in the light most favorable to the party against whom the verdict was directed, and we determine whether there is any evidence of probative value to raise a material fact issue on the question presented. *See Bostrom Seating, Inc. v. Crane Carrier*

5

*Co.,* 140 S.W.3d 681, 684 (Tex. 2004). We credit favorable evidence if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *See Hunter,* 339 S.W.3d at 802 (citing *City of Keller,* 168 S.W.3d at 827). A directed verdict in favor of the defendant is proper when "a plaintiff fails to present evidence raising a fact issue essential to the plaintiff's right of recovery" or when the "plaintiff admits or the evidence conclusively establishes a defense to the plaintiff's cause of action." *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.,* 29 S.W.3d 74, 77 (Tex. 2000); *see also B & W Supply, Inc. v. Beckman,* 305 S.W.3d 10, 21 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (holding directed verdict is warranted when evidence establishes that no other verdict can be rendered and moving party is entitled to judgment as matter of law).

## Scope of Representation

Pursuant to subsection (d) of rule 1.15 of the Texas Disciplinary Rules of Professional Conduct, "Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as . . . refunding any advance payments of fee that has not been earned." Tex. Disciplinary Rules Prof'l Conduct R. 1.15(d), *reprinted in* TEX. GOV'T CODE ANN. tit. 2, subtit. G, app. A (Vernon 2005) (Tex. State Bar R., art. X, § 9). In its first two issues, the Commission argues that Guajardo violated this rule by not refunding money to Kahn and Ramirez after the writ was rejected and by applying

6

the money Kahn sent for the writ to other fees and costs incurred relating to other filings. Central to these arguments is the claim that Guajardo's representation of Kahn and Ramirez in filing the writ was separate from her representation of Kahn and Ramirez in all other actions taken to get Ramirez into the United States. Based on this claim, the Commission argues that, when the writ was rejected and she withdrew her fees and costs, Guajardo was required to reimburse the payments made for those fees and costs and had no authority to apply the payment to any other fees and costs incurred by Guajardo on behalf of Kahn.

We agree with Guajardo that there is no evidence to support the claim that the filing of the writ was separate from the remainder of Guajardo's representation of Kahn and Ramirez. Comment 1 to rule 1.02 provides that both the lawyer and client are in charge of the objectives and means of representation. Tex. Disciplinary Rules Prof'l Conduct R. 1.02 cmt. 1, *reprinted in*, TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (Vernon 2005). The client has the authority to determine the objectives of legal representation. *Id.* The lawyer is accountable for "the means by which the client's objectives are best achieved." *Id.* Therefore, a lawyer has "very broad discretion to determine technical and legal tactics." *Id.*

At trial, Kahn testified that he "expected [Guajardo] to just go out there and defend" Ramirez. He identified no other limitation on the scope of Guajardo's representation. Further, even the goals of the writ show that it had no purpose

independent of the remainder of Guajardo's representation. Guajardo testified at trial that the purpose of the writ was to seek a declaration that certain statements made by Ramirez during her interrogation were made under duress. The effect of the writ, if successful, would have been to prevent Ramirez's prior statements from having a negative effect on the determinations she was seeking in her other filings. Accordingly, the purpose of the writ was to make approval easier for her other filings. Without the remainder of the representation, the writ would have had no relevant effect.

In contrast, the Commission points to no evidence in the record to support its claim that the writ was separate from the remainder of Guajardo's representation. Instead, the Commission appears simply to take it as a given that the writ proceeding must have been a separate representation. But there is no reason to simply take this as true absent factual support. The scope of the attorney-client relationship is set by the client and the attorney. *See* Tex. Disciplinary Rules Prof'l Conduct R. 1.02(a)(1) (requiring attorney to abide by client's decisions concerning objectives and general methods of representation); *Joseph v. State*, 3 S.W.3d 627, 639 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (holding "[t]he nature of the attorney-client relationship defines an attorney's duties and the professional services to be rendered"). In order to establish that Guajardo's work on the writ was outside the scope of the original representation and, thus, constituted a

separate representation, the Commission was required to show some evidence that the parties intended these actions to be separate representations. Instead, the opposite is established in the record.

Because we hold that Guajardo's work on the writ was within the scope of her original representation of Kahn and Ramirez, we do not need to determine whether Guajardo could have applied the fees paid in one representation to fees incurred in a separate representation. Accordingly, we overrule the Commission's first and second issues.

### Authority to Charge Nonrefundable Retainer

In its third issue, the Commission alleges that the trial court erred in granting the directed verdict in favor of Guajardo because Guajardo charged a non-refundable retainer that would not be applied to future attorney's fees and did not make it clear that Kahn's representation would preclude other employment. Guajardo argues that this issue has not been preserved for appeal. We agree.

In order to charge a non-refundable retainer that is not applied to future attorney's fees, the attorney must meet certain requirements. *See Cluck v. Comm'n for Lawyer Discipline*, 214 S.W.3d 736, 739–40 (Tex. App.—Austin 2007, no pet.). The Commission alleged in its original petition that Guajardo did not meet these requirements by alleging that the original payment was, instead, an advance payment of attorney's fees that should have been kept segregated from Guajardo's

9

operating account. *See* Tex. Disciplinary Rules Prof'l Conduct R. 1.14(a), *reprinted in* TEX. GOV'T CODE ANN. tit. 2, subtit. G, app. A (Vernon 2005) (Tex. State Bar R., art. X, § 9) (requiring attorney to hold funds belonging to client separate from attorney's own property). The Commission dropped this claim, however, in its live pleading at the time of trial.

Furthermore, when the Commission began questioning Guajardo at trial about the facts supporting her claim that she met the requirements of the non-refundable retainer that would not be applied to future attorney's fees, Guajardo objected to the relevance of the testimony, and the trial court sustained the objection. The Commission does not challenge this ruling on appeal. Accordingly, there is no basis for concluding that this matter was tried by consent. *See Moore v. Altra Energy Techs., Inc.*, 321 S.W.3d 727, 734 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (holding no trial by consent if other party made appropriate complaint).

Because whether Guajardo was authorized to charge a non-refundable retainer that would not be applied to future attorney's fees was not an issue at trial, it follows that the trial court did not grant a directed verdict on it. Accordingly, it cannot be a basis for reversing the trial court's judgment. We overrule the Commission's third issue.

**Conclusion**

We affirm the judgment of the trial court.

Laura Carter Higley
Justice

Panel consists of Justices Jennings, Higley, and Sharp.