# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-10806
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

December 5, 2016

Lyle W. Cayce
Clerk

PLAINS COTTON COOPERATIVE ASSOCIATION,

Plaintiff–Appellee,

v.

GARY L. GRAY; GRAY FARMS, INCORPORATED,

Defendants–Appellants.

Appeal from the United States District Court
for the Northern District of Texas
USDC 5:14-CV-171

Before HIGGINBOTHAM, PRADO, and HAYNES, Circuit Judges.

PER CURIAM:*

Defendants–Appellants Gary Gray and Gray Farms, Inc. (collectively, "Gray") appeal the district court's partial grant of summary judgment in favor of Plains Cotton Cooperative Association ("PCCA"), its denial of Gray's motion for leave to amend the pleadings to add Elliott Producers Gin ("Elliott") as a

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-10806

third-party defendant, and the amount the district court awarded PCCA in attorneys' fees. For the following reasons, we AFFIRM.

## I. FACTS AND PROCEDURAL BACKGROUND

This case arises out of a contract dispute between Gray, a cotton farmer, and PCCA, an operator of a marketing pool that markets and sells the crops of multiple cotton producers. Gray and PCCA initially entered into five identical contracts which obligated Gray to deliver his 2010 cotton crop to PCCA, and in turn obligated PCCA to market and sell the cotton and deliver any profits to Gray. Before Gray was required to perform, PCCA sent Gray five amended agreements, which contained several terms that deviated from the original contracts. The new proposed contracts were delivered through Elliott and were accompanied by a cover later from Elliott requesting signatures on the new versions of the contracts. Purportedly believing that these new contracts were materially different from the old versions and that there was no longer had an enforceable agreement with PCCA, Gray never delivered the 2010 cotton crop.

On July 17, 2014, PCCA filed a breach of contract action against Gray in state court in Lubbock, Texas.[1] Gray removed the case to federal court on the basis of diversity jurisdiction. The district court entered a scheduling order on October 7, 2014, and on February 1, 2016, the parties both timely filed competing motions for summary judgment. Thereafter, Gray filed a motion to amend the pleadings to add Elliott as a third-party defendant and to request a

---

[1] Gray initially filed suit in 2011 in Oklahoma state court seeking declaratory judgment that he was not obligated to deliver the 2010 cotton crop to PCCA under the original contracts. Because the contracts contained a clause requiring any dispute regarding the agreements be brought in Lubbock, Texas, the state court dismissed the case without prejudice on the basis of improper venue. Gray then filed a motion for a new trial in Oklahoma state court which was ultimately denied. Although he appealed this decision, the Oklahoma Court of Civil Appeals affirmed the district court, and the Oklahoma Supreme Court denied Gray's petition for a writ of certiorari.

2

No. 16-10806

new scheduling order. The district court denied Gray's motion to amend pleadings and granted summary judgment in favor of PCCA on its breach of contract claim. The court then entered judgment in favor of PCCA and granted PCCA's motion for attorneys' fees. Gray timely appealed.

## II. DISCUSSION

### A.    Summary Judgment

"We review a grant of summary judgment de novo, applying the same standard that the district court applied." *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 417 (5th Cir. 2016). Thus, summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, factual inferences are viewed in the light most favorable to the nonmoving party. *Smith*, 827 F.3d at 417.

To prove breach of contract, a plaintiff must establish "(1) the existence of a valid contract between the plaintiff and defendant, (2) the plaintiff's performance or tender of performance, (3) the defendant's breach of the contract, and (4) the plaintiff's damage as a result of the breach." *Hunter v. Pricekubecka, PLLC*, 339 S.W.3d 795, 802 (Tex. App.—Dallas 2011, no pet.). The parties agree that they originally entered five valid contracts under which Gray was bound to deliver the 2010 cotton crop to PCCA and PCCA was required to market and sell Gray's cotton. Gray also does not dispute PCCA's contention that Gray failed to deliver the 2010 cotton crop. Instead, Gray argues that performance under the original contracts was excused because PCCA purportedly repudiated the original contracts. Gray contends that PCCA did so by sending Gray new contracts with ostensibly "materially different terms" along with cover letters that Gray claims indicated that "PCCA would not honor the [o]riginal [c]ontracts."

No. 16-10806

Anticipatory repudiation is an affirmative defense to a breach of contract claim. *El Paso Prod. Co. v. Valence Operating Co.*, 112 S.W.3d 616, 621–22 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). "A repudiation or anticipatory breach occurs when a party's conduct 'shows a fixed intention to abandon, renounce, and refuse to perform the contract.'" *Hunter*, 339 S.W.3d at 802 (quoting *SAVA gumarska in kemijska industria d.d. v. Advanced Polymer Sci., Inc.*, 128 S.W.3d 304, 315 (Tex. App.—Dallas 2004, no pet.)). But such repudiation "must be absolute and unconditional." *Id.* In other words, "[t]he declaration of intent to abandon the obligation must be in positive and unconditional terms." *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 631 (N.D. Tex. 2010) (citing *Preston v. Love*, 240 S.W.2d 486, 487 (Tex. Civ. App.—Austin 1951, no writ)).

Thus, to show anticipatory repudiation, Texas courts have required that a party overtly communicate its intent not to perform under a valid and enforceable agreement. *Compare Hunter*, 339 S.W.3d at 803 (holding that mere presentation of a settlement agreement absent direct language or conduct evincing intent not to perform did not constitute a "fixed intention to abandon" the original contract (quoting *SAVA*, 128 S.W.3d at 315)), *with Hauglum v. Durst*, 769 S.W.2d 646, 649, 651 (Tex. App.—Corpus Christi 1989, no writ) (determining that the appellant "definite[ly] manifest[ed]" that he would no longer perform the terms of his original contract when he orally requested an amendment and after being rebuffed, drove the appellee out to a deserted country road, threatened to sue him, stated that he "was mad enough to smash [the appellee's] face in," and admonished the appellee that "he had better have an amended agreement on his desk by noon the next day"), *and Laredo Hides Co. v. H&H Meat Prods. Co.*, 513 S.W.2d 210, 216, 221 (Tex. Civ. App.—Corpus Christi 1974, writ ref'd n.r.e.) (finding anticipatory repudiation where a meat packer "unequivocally told [a representative of a hide company] that he was

not going to sell him any more hides, and further advised that it was useless for him to send a truck for the hides").

Following this pattern, Texas courts require more than a mere attempt to renegotiate material terms of the initial contract to find repudiation. In *City of The Colony v. North Texas Municipal Water District*, two cities (Frisco and The Colony) and a municipal water district entered into a contract where the district would operate a wastewater-treatment plant for the cities. 272 S.W.3d 699, 715 (Tex. App.—Fort Worth 2008, no pet.). Under the agreement, both cities bore the responsibility of transporting their own wastewater to the plant. *Id.* The plant, however, was located entirely within Frisco's borders, thus requiring The Colony to run through Frisco's property to deliver its wastewater. *Id.* Because Frisco refused to grant access easements to The Colony unless it conveyed part of its territory to Frisco—a move that The Colony alleged was an "attempt[] to negotiate new terms that were materially different from those in the initial agreement"—The Colony argued that it was entitled to summary judgment that Frisco had repudiated their initial contract. *Id.* at 717, 738. In spite of Frisco's clear desire to negotiate a separate real property agreement with The Colony, the court concluded that The Colony did not "raise a genuine issue of material fact that Frisco demonstrated by words or actions either an intent not to perform or an inability to perform its obligations under the [c]ontract." *Id.* at 738.

Just as The Colony argued that Frisco was attempting to renegotiate terms of their original agreement, Gray argues that PCCA attempted to force Gray to agree to materially new terms by sending Gray amended versions of the original contracts along with a cover letter stating that PCCA was "requiring" new signatures. As was also the case in *The Colony*, however, here the purported attempt to change material terms of the contract is not accompanied by any affirmative language communicating a fixed intention not

to perform under the original agreement. Although the cover letters did use the word "requiring," they also went on to explain that signing and returning the new contracts would ensure that "everything [would] be ready when [Gray] want[ed] checks for cotton." This language does not rise to the level of a positive and unconditional intent to abandon the original contracts and does not create a genuine dispute of fact regarding whether the contract was repudiated. Accordingly, we hold that the district court did not err in granting PCCA partial summary judgment on its breach of contract claim.[2]

## B.   Motion to Amend the Pleadings to Join a Third Party

The denial of leave to amend a pleading is reviewed for abuse of discretion. *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152 (5th Cir. 2010). Where a scheduling order has been issued, Federal Rule of Civil Procedure 16(b) governs the amendment of pleadings after the scheduling order deadline has passed. *S&W Enters., LLC v. SouthTrust Bank of Ala.*, 315 F.3d 533, 535–36 (5th Cir. 2003). "While Federal Rule of Civil Procedure 15(a) provides that leave to amend shall be 'freely' given, Rule 16(b)(4) limits modifications to a scheduling order to situations where good cause is shown." *United States ex rel. Bias v. Tangipahoa Par. Sch. Bd.*, 816 F.3d 315, 328 (5th Cir. 2016). The good cause standard requires the "party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *S&W Enters.*, 315 F.3d at 535 (quoting 6A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1522.1 (2d ed. 1990)). A court considers the following four factors when determining if good cause has been shown: "(1) the explanation for the failure to [timely move

---

[2] Gray also argues that Elliott was acting as PCCA's agent when it sent the new contracts and cover letters to Gray, and thus PCCA is responsible for the statements made in the cover letters. Because we do not find that the cover letters create a genuine dispute of material fact as to whether PCCA repudiated the original contracts, we need not decide this issue.

for leave to amend]; (2) the importance of the [amendment]; (3) potential prejudice in allowing the [amendment]; and (4) the availability of a continuance to cure such prejudice." *Bias*, 816 F.3d at 328 (alterations in original) (quoting *S&W Enters.*, 315 F.3d at 536).

Here, the district court denied Gray's motion to amend the pleadings to join Elliott as a party and for a new scheduling order. Gray filed a motion for leave to amend almost eighteen months after this case was removed to federal court and less than two months before the date set for trial. Although Gray claimed the failure to request leave was due to PCCA's late production of a document called the "Gin Agency Agreement," the issue of whether Elliott was acting as an agent of either party was already a point of contention between the parties. Accordingly, we agree with the district court's conclusion that Gray failed to meet his burden of showing good cause for leave to amend at such a late date. We thus hold the district court did not abuse its discretion in denying Gray's motion for leave to amend the pleadings.

## C.    Attorneys' Fees

We review an award for attorneys' fees for abuse of discretion. *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). Under Texas law[3] a court may award "reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract." *Coffel v. Stryker Corp.*, 284 F.3d 625, 640 (5th Cir. 2002) (quoting Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (West 1997)). "The award of reasonable attorneys' fees is mandatory under § 38.001 if the plaintiff prevails in his or her breach of contract claim and recovers damages." *Id.*

---

[3] Because "[s]tate law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision," *Mathis*, 302 F.3d at 461, the attorneys' fee issue in this case is governed by Texas law.

No. 16-10806

(citing *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 603, 613 (5th Cir. 2000)).

The district court awarded PCCA $92,901.95 in attorneys' fees—discounting the original amount sought by $3,175.00 due to the late production of the "Gin Agency Agreement." In making its determination, the district court "review[ed] the lodestar amounts relevant in this case and the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974),"[4] and determined that, other than the amount it discounted, "the nature and extent of services supplied by Plaintiff's attorneys justif[ied] the billed amount."

Gray argues first that PCCA made an excessive demand by claiming $221,746.50 in damages when it was only entitled to a liquidated amount of $40,700 and is therefore not entitled to any attorneys' fees. *See Findlay v. Cave*, 611 S.W.2d 57, 58 (Tex. 1981) ("A creditor who makes an excessive demand upon a debtor is not entitled to attorney's fees for subsequent litigation required to recover the debt."). Because Gray did not raise this argument until the response to the motion for attorneys' fees, we find this argument waived. *See Tuthill v. Sw. Pub. Serv. Co.*, 614 S.W.2d 205, 212 (Tex. Civ. App.—Amarillo 1981, writ ref'd n.r.e.) (finding "excessive demand" waived where the appellees did not affirmatively assert the defense in their "live trial pleadings"); *cf. United Servs. Auto. Ass'n v. Hayes*, ___S.W.3d___, No. 01-14-00133-CV, 2016 WL 4536333, at *10 (Tex. App.—Houston [1st Dist] Aug. 30,

---

[4] It appears that Texas law applies to this determination and thus that the district court should have considered the factors enumerated in *Arthur Andersen & Co. v. Perry Equipment Corp.*, 945 S.W.2d 812, 818 (Tex. 1997), rather than those in *Johnson. See Fluorine on Call, Ltd. v. Fluorogas Ltd.*, 380 F.3d 849, 866–67 (5th Cir. 2004). Because the analysis under both cases is so similar, however, this distinction does not change our conclusion. *See Mid-Continent Cas. Co. v. Chevron Pipe Line Co.*, 205 F.3d 222, 232 (5th Cir. 2000) (determining that it was unnecessary to determine whether the *Johnson* or *Arthur Andersen* factors governed in a diversity case because the analysis is comparable).

2016, no pet.) (affirming that an excessive demand challenge is preserved only where it is both pled as an affirmative defense and presented for fact finding as to its elements).

Gray also argues that the attorneys' fee award is unreasonable because the amount awarded ($92,901.95) far exceeds the damages obtained ($40,700) and because PCCA received only a relatively small proportion of the damages it initially requested—it was awarded only $40,700, but initially sought $263,920.[5] We disagree. Although our case law permits a court to reduce a fee award to reflect a party's recovery in proportion to the damages it initially claimed, it does not require a reduction as Gray contends. *See Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 679 (5th Cir. 2015) (concluding that proportionally discounting the attorneys' fee award was not an abuse of discretion). Because of the extensive and unnecessary litigation of this same issue in Oklahoma state court in 2011, and given the district court's careful consideration of "the nature and extent of the services" provided by PCCA's attorneys—including the district court's decision to discount the award for "inexplicably late production of the Gin Agency Agreement"—we hold that the district court did not abuse its discretion in awarding PCCA $92,901.95 in attorneys' fees.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment, its denial of Gray's motion to amend the pleadings, and its award of $92,901.95 in attorneys' fees to PCCA.

---

[5] PCCA initially sought $263,920 in damages then lowered its demand to $221,746.50.