**AFFIRM in Part, REVERSE in Part, and RENDER; and Opinion Filed March 30, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00054-CV

**KWIK INDUSTRIES, INC. AND RAY ELLIS, Appellants/Cross-Appellees**

v.

**ROCK PRAIRIE HOLDINGS, LTD., CENTEX KWIK CARE, INC., BILL LOFTON, AND JAMES LOFTON, Appellees/Cross-Appellants**

**WILL-WALL ENTERPRISES, INC., MITZI WILLIS, AND DR. CHARLES E. WILLIS, II, Appellants**

v.

**KWIK INDUSTRIES, INC. AND RAY ELLIS, Appellees**

**On Appeal from the 162nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 05-10901**

## MEMORANDUM OPINION

Before Justices Francis, Lang-Miers, and Myers
Opinion by Justice Lang-Miers

Multiple parties joined as plaintiffs in one lawsuit alleging fraud against Kwik Industries, Inc. (Kwik), Ray Ellis (Ellis), and others. Some of the claims related to the purchase of dry cleaning service centers and others related to the purchase of automobile service facilities. Many of the plaintiffs and their claims were dismissed before trial. Two remaining groups of plaintiffs and their claims are the subject of this appeal.

Mitzi Willis, Dr. Charles E. Willis, II, and Will-Wall Enterprises, Inc. asserted claims against Kwik and Ellis for fraud, fraudulent concealment, conspiracy, and violations of several statutes in connection with the purchase of a dry cleaning service center (the Willis claims). Bill

Lofton, James Lofton, Rock Prairie Holdings, Ltd., and Centex Kwik Care, Inc. asserted claims against Kwik and Ellis for fraud, fraudulent concealment, conspiracy, and violations of several statutes in connection with the purchase of an automobile lube and tune service facility (the Lofton claims). The trial court dismissed the Willis claims and most of the Lofton claims in its order partially granting a motion for directed verdict filed by Kwik and Ellis. A jury considered the remaining claims in the Lofton case, and found that Kwik and Ellis committed fraud with respect to Bill Lofton, James Lofton, Rock Prairie Holdings, Ltd., and Centex Kwik Care, Inc. The trial court denied Kwik and Ellis's amended motion for judgment notwithstanding the verdict and alternative motion for new trial, and entered a final judgment in accordance with the jury's verdict.

In three issues on appeal, Mitzi Willis, Dr. Charles E. Willis, II, and Will-Wall Enterprises, Inc. contend the trial court erred by granting Kwik and Ellis's motion for directed verdict and dismissing the Willis claims, finding no agency relationship between Gary Henson and Kwik, and no fraudulent representations by Kwik and Ellis. And in two issues on appeal, Kwik and Ellis contend the trial court erred in the Lofton case by denying their amended motion for judgment notwithstanding the verdict and their alternative motion for new trial, because there was no evidence to support the jury's verdict. In a single issue on cross-appeal, Bill Lofton, James Lofton, Rock Prairie Holdings, Ltd., and Centex Kwik Care, Inc. contend the trial court erred by granting Kwik and Ellis's motion for directed verdict, dismissing their claims against Kwik and Ellis for fraud by misrepresentation and fraud by concealment.

Because all dispositive issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.2(a), 47.4. We overrule the issues raised by Mitzi Willis, Dr. Charles E. Willis, II, and Will-Wall Enterprises, Inc. and affirm the trial court's judgment on the Willis claims. We sustain the first issue raised by Kwik and Ellis, reverse the trial court's judgment,

–2–

and render judgment that Bill Lofton, James Lofton, Rock Prairie Holdings, Ltd., and Centex Kwik Care, Inc. take nothing from Kwik and Ellis. Finally, we overrule the issue raised on cross-appeal by Bill Lofton, James Lofton, Rock Prairie Holdings, Ltd., and Centex Kwik Care, Inc.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Kwik designs, builds, and sells automobile service facilities, dry cleaning service centers, and car washes. Ellis is the founder, president, and chairman of the board of Kwik. The plaintiffs were all purchasers of automobile service facilities or dry cleaning service centers. In their sixth amended petition, multiple plaintiffs alleged claims for fraud, fraudulent concealment, conspiracy, and violations of several statutes against Kwik, Ellis, and several other defendants. Plaintiffs contended they were fraudulently induced to purchase automobile service facilities or dry cleaning service centers from Kwik.

During the course of the nine-year-litigation, various parties were dismissed or severed from the lawsuit. Finally, on November 5, 2012, the claims of the remaining plaintiffs, Bill Lofton, James Lofton, Rock Prairie Holdings, Ltd., and Centex Kwik Care, Inc. (the "Lofton plaintiffs"), and Mitzi Willis, Dr. Charles E. Willis, II, and Will-Wall Enterprises, Inc., (the "Willis plaintiffs"), proceeded to a jury trial against the remaining defendants, Kwik and Ellis. At the conclusion of the plaintiffs' case-in-chief, Kwik and Ellis filed a motion for directed verdict. The trial court partially granted the motion as to certain claims asserted by the Lofton plaintiffs and granted the motion with respect to all claims asserted by the Willis plaintiffs, ordering that the Willis plaintiffs take nothing on their claims against Kwik and Ellis, and dismissing all of the Willis plaintiffs' claims with prejudice. The Lofton plaintiffs' remaining claims were decided by the jury, which found in favor of the Lofton plaintiffs and awarded $554,819.06 in damages. The court held a hearing on Kwik and Ellis's amended motion for

judgment notwithstanding the verdict and alternative motion for new trial, denied the motion, and entered a final judgment based upon the jury's verdict.

The Willis plaintiffs appeal the trial court's order on Kwik and Ellis's motion for directed verdict, ordering that the Willis plaintiffs take nothing on their claims against Kwik and Ellis. Kwik and Ellis appeal the trial court's denial of their amended motion for judgment notwithstanding the verdict and alternative motion for new trial. The Lofton plaintiffs did not file a notice of appeal but raise a cross-point in their appellees' brief, challenging the trial court's order granting Kwik and Ellis's motion for directed verdict on certain of their claims against Kwik and Ellis.

## II. THE WILLISES' APPEAL

### A. BACKGROUND

Mitzi Willis and her husband, Dr. Charles E. Willis, II, became interested in acquiring and operating a dry cleaning business. They talked to the owner of the Kwik dry clean supercenter they patronized, who gave Mitzi Willis contact information for Gary Henson. The Willis plaintiffs contacted Henson who came to meet with them at their home. Henson provided the Willis plaintiffs with financial documents for seven or eight dry cleaning supercenters in the area, showing sales and income for various periods of time. Henson also gave the Willis plaintiffs a pro forma that projected the financial potential of a dry cleaning supercenter located at the intersection of Belt Line and Cockrell Hill in DeSoto, Texas. On another occasion, Henson took the Willises to tour several dry cleaning supercenters. Henson also suggested that the Willises call the owners of other dry cleaning businesses to discuss their operations. The Willises formed a corporation, Will-Wall Enterprises, Inc., to own the dry cleaning business they purchased. On April 7, 2003, the Willis plaintiffs signed a contract of sale with Kwik for the purchase of real property in DeSoto, Texas, and for Kwik to build and equip a dry cleaning

business on that property. Kwik built and equipped the dry cleaning business but the business did not generate the revenue expected by the Willis plaintiffs.

The Willis plaintiffs appeal from the trial court's order partially granting Kwik and Ellis's motion for directed verdict, which dismissed all of the Willis plaintiffs' claims against Kwik and Ellis. Kwik and Ellis's motion for directed verdict was based on their contentions that (1) there was no evidence that Ellis made any representations to induce the Willis plaintiffs to enter into the contract because prior to signing the contract, the Willis plaintiffs' only contact was with Henson; and (2) there was no evidence that Henson was an employee or agent of Kwik.

In three issues, the Willis appellants argue that the trial court erred in granting the motion for directed verdict because the Willises presented probative evidence that: (1) Gary Henson was Kwik's agent during the time Henson made representations to the Willises; (2) Kwik and Ellis made fraudulent misrepresentations that the price charged for the dry cleaning service center was fair, reasonable, and supported by a valid appraisal; and (3) Kwik and Ellis made fraudulent misrepresentations that the revenue projections contained in the pro forma were made in accordance with industry standards, and the Willises could expect to achieve similar financial results.

## B. STANDARD OF REVIEW

A trial court may direct a verdict when a plaintiff fails to present evidence raising a fact issue essential to its right of recovery, or when the evidence conclusively establishes a defense to the plaintiff's cause of action. *See Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000); *Gomer v. Davis*, 419 S.W.3d 470, 475 (Tex. App.—Houston [1st Dist.] 2013, no pet.). In reviewing a trial court's directed verdict, we must determine if there is more than a scintilla of evidence to raise a fact issue on the material question presented. *Pinnacle Anesthesia Consultants, P.A. v. Fisher*, 309 S.W.3d 93, 108 (Tex. App.—Dallas 2009,

–5–

pet. denied). We examine the evidence in the light most favorable to the nonmovant, crediting evidence a reasonable jury could credit and disregarding contrary evidence and inferences unless a reasonable jury could not. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013); *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 217 (Tex. 2011). If the evidence submitted to support a finding on the issue "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions," it constitutes more than a scintilla of evidence and the case must be reversed and remanded for a jury determination. *Pinnacle*, 309 S.W.3d at 108 (citing *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 234 (Tex. 2004)).

### C. WILLISES' FIRST ISSUE

In their first issue, the Willis appellants argue that the trial court erred in granting Kwik and Ellis's motion for directed verdict because they presented probative evidence that Henson was Kwik's agent at the time Henson made representations to them.

### *Applicable Law - Agency*

An agency relationship is not presumed, and the party who alleges an agency relationship has the burden of proving it. *IRA Res., Inc. v. Griego*, 221 S.W.3d 592, 597 (Tex. 2007); *United Residential Properties, L.P. v. Theis*, 378 S.W.3d 552, 563 (Tex. App.—Houston [14th Dist.] 2012, no pet.). And although the question of agency is generally one of fact, the question of whether a principal-agent relationship exists under established facts is a question of law for the court. *See Ross v. Texas One P'ship*, 796 S.W.2d 206, 210 (Tex. App.—Dallas 1990, writ denied) ("[T]he existence of an agency relationship can be a question of law to be determined by the agreement between, and the words and conduct of, the parties."). "An agent's authority to act on behalf of a principal depends on some communication by the principal either to the agent (actual or express authority) or to the third party (apparent or implied authority)." *Gaines v.*

–6–

*Kelly*, 235 S.W.3d 179, 182 (Tex. 2007). Absent actual or apparent authority, an agent cannot bind a principal. *Jarvis v. K & E Re One, LLC*, 390 S.W.3d 631, 639 (Tex. App.—Dallas 2012, no pet.).

Actual authority is authority a principal (1) intentionally confers on an agent; (2) intentionally allows the agent to believe he possesses; or (3) by want of due care allows the agent to believe he possesses. *Id.* at 639–40 (citing *Affordable Power, L.P. v. Buckeye Ventures, Inc.*, 347 S.W.3d 825, 832 (Tex. App.—Dallas 2011, no pet.)). Actual authority may be implied from the conduct of the parties or from facts and circumstances surrounding the transaction; however, it cannot be based merely on the words or deeds of the agent. *CNOOC Southeast Asia Ltd. v. Paladin Resources (SUNDA) Ltd.*, 222 S.W.3d 889, 899 (Tex. App.—Dallas 2007, pet. denied). Apparent authority is created by "written or spoken words or conduct by the principal to third parties, not to the agent." *Id.* Apparent authority is based on estoppel, arising "either from a principal knowingly permitting an agent to hold [himself] out as having authority or by a principal's actions which lack such ordinary care as to clothe an agent with the indicia of authority, thus leading a reasonably prudent person to believe that the agent has the authority [he] purports to exercise." *Gaines*, 235 S.W.3d at 182 (quoting *Baptist Mem. Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 948 (Tex. 1998)).

### *Preservation Of Error*

Appellees contend that because the Willises did not plead that Henson was Kwik's agent, they cannot raise the issue on appeal. In plaintiffs' sixth amended petition, the Willis plaintiffs claimed that Ellis, as an authorized agent of Kwik, approached them, offered to sell them a dry cleaning facility, and made fraudulent representations regarding the price charged and revenue projections. The pleading does not allege that Henson was Kwik's agent, or that Henson, as an authorized agent of Kwik, made fraudulent representations to the Willis plaintiffs. Absent

pleadings, the Willis plaintiffs could only prevail on their agency claim if the issue was tried by consent. *See Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex. 1983) ("[A] party may not be granted relief in the absence of pleadings to support that relief."); *Elliott v. Hollingshead*, 327 S.W.3d 824, 837 (Tex. App.—Eastland 2010, no pet.) (concluding party may not be granted relief in absence of adequate pleadings unless issue is tried by consent).

Issues not raised in the pleadings can be tried by express or implied consent of the parties. TEX. R. CIV. P. 67; *Hampden Corp. v. Remark, Inc.*, 331 S.W.3d 489, 495 (Tex. App.—Dallas 2010, pet. denied). However, this rule "applies only where it appears from the record that the issue was actually tried, although not pleaded." *Case Corp. v. Hi-Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 771 (Tex. App.—Dallas 2005, pet. denied). To determine whether the issue was tried by consent, the court must examine the record not for evidence of the issue, but rather for evidence that the issue was tried. *Hampden*, 331 S.W.3d at 496. But Henson did not testify at trial, Kwik and Ellis raised hearsay objections to the Willis plaintiffs' numerous attempts to introduce testimony by Mitzi Willis that Henson was Kwik's agent, and Ellis testified that Henson was not his employee or agent. And during trial, the trial court considered argument from counsel on the agency issue, ruled from the bench that the court found no agency relationship between Henson and Kwik, and later granted Kwik and Ellis's motion for directed verdict that there was no evidence that Henson was an employee or agent of Ellis or Kwik. Based on this record, we conclude that both parties understood the issue was being contested and was tried by consent. *See id*.

### Analysis of Agency Issue

### 1. Actual Authority

The Willis appellants argue that the trial court erred in granting Kwik and Ellis's motion for directed verdict because they presented evidence to raise a fact issue regarding whether

Henson had both actual and apparent authority to act as Kwik's agent. To raise a fact issue regarding actual authority, however, the Willises had to present evidence that Kwik and Ellis, the principals in this case, communicated to Henson that he had authority to bind Kwik and Ellis. The Willis appellants contend that a written Letter Agreement between Kwik and Dry Clean Super Center, Inc. (DCSC), dated September 12, 1996, in which those parties set forth the terms of their agreement to work together to build and sell dry cleaning facilities, raised an issue of fact regarding Henson's actual authority. They argue that because the agreement is signed by Ellis as president of Kwik, and Henson as president of DCSC, and authorizes Henson to act as the "sales force" for Kwik, it is evidence of actual authority.

The Willis appellants cite to *Burnside Air Conditioning & Heating, Inc. v. T.S. Young Corp.*, 113 S.W.3d 889 (Tex. App.—Dallas 2003, no pet.) to support their position. But in that case, Burnside asked Smith, its accountant, to contact a personnel agency to help Burnside hire an operations manager. *Id*. at 896. When the agency charged a placement fee for the candidate hired by Burnside, Burnside argued that Smith was not its agent and had not been authorized to agree to a fee. *Id*. at 894. The court concluded there was an agency relationship because there was evidence supporting the conclusion that Burnside authorized Smith to act on its behalf in retaining an employment agency. *Id*. at 896. But this case is different. The contract between DCSC and Kwik does not authorize DCSC or Henson to act as an agent for Kwik, or to enter into any binding agreements on behalf of Kwik.

The Willis appellants claim that other evidence of Henson's actual authority includes the pro forma for a dry cleaning service center, prepared by Ellis and given to them by Henson, and financial statements from other dry cleaning service centers, including several Kwik dry cleaning service centers, given to them by Henson. But the Willis appellants do not explain how these documents constitute "written evidence of Henson's status as an agent of Kwik."

Additionally, Ellis testified at trial that Henson had never worked for Kwik. Ellis stated that although DCSC and Kwik did business together in accordance with their contract, DCSC and Kwik were separate and distinct companies, and Henson had no authority to sign contracts on behalf of Kwik. Ellis testified that DCSC and Henson found people who were interested in buying a dry cleaning service center and when a deal closed, DCSC was paid a percentage of the deal in accordance with terms of the contract between DCSC and Kwik. And Ellis testified that Kwik, not DCSC or Henson, signed the contract with the purchaser to build the dry cleaning service center. Ellis also testified that he did not know what information Henson provided to the Willises as part of his sales presentation. And he testified that he did not give Henson financial information about dry cleaners. Based on this record, we conclude there was no evidence that Henson had actual authority to act as agent for Kwik and Ellis. *See CNOOC Southeast Asia Ltd*., 222 S.W.3d at 899.

## 2. *Apparent Authority*

The Willis appellants also argue that "Kwik acted without ordinary care in permitting Henson to 'clothe' himself in the symbols of Kwik in a way which would lead a reasonable person to believe he was their agent." They contend that Henson used Kwik's office space, used Kwik's telephone and facsimile numbers, used Kwik's fax machine to send the pro forma to the Willises, and provided the Willises with a business card with various Kwik "brand" labels on it.

The Willis appellants rely on *Walker Ins. Servs. v. Bottle Rock Power Corp*., 108 S.W.3d 538 (Tex. App.—Houston [14th Dist.] 2003, no pet.) to support their argument that Henson had apparent authority to act on behalf of Kwik and Ellis. In *Walker*, the issue was whether Beane was Bottle Rock's agent for purposes of personal jurisdiction. The court concluded there was no evidence of actual authority, but there was evidence of apparent authority. *Id*. at 550. The court referred to several acts by Bottle Rock, the purported principal, that suggested a reasonably

–10–

prudent person would believe Beane possessed the authority to act on Bottle Rock's behalf. *Id.* at 551. Evidence was presented that a Bottle Rock director confirmed that Beane was authorized to act and negotiate on behalf of Bottle Rock, that Beane was the point person for Bottle Rock, and that almost all of the negotiations were conducted through Beane as the intermediary for Bottle Rock. *Id.* Here, however, the record establishes that Henson provided information at the request of the Willises and that Ellis did not provide that information to the Willises or to Henson. Once the Willises decided they were interested in purchasing a dry cleaning service center, Henson turned them over to Kwik and Ellis to negotiate the terms of the purchase.

In determining an agent's apparent authority, we do not look at the words or conduct of the alleged agent; we consider only the words or conduct of the principal to make this determination. *See CNOOC Southeast Asia Ltd.*, 222 S.W.3d at 899; *see also Gaines*, 235 S.W.3d at 182. And the Willis appellants do not point to any words or conduct by Kwik or Ellis to indicate they knowingly permitted Henson to hold himself out as Kwik's agent. As a result, based on this record, we conclude there was no evidence that Henson had apparent authority to act as agent for Kwik and Ellis and that the trial court did not err by granting Kwik's and Ellis's motion for directed verdict.

We overrule the Willis appellants' first issue.

### D. WILLISES' SECOND AND THIRD ISSUES

In the Willis appellants' second and third issues, they contend they presented probative evidence that Kwik and Ellis made fraudulent misrepresentations to them that: (1) the price charged for the dry cleaning service center was fair, reasonable, and supported by a valid appraisal; and (2) the revenue projections contained in the pro forma were made in accordance with industry standards, and the Willis appellants could expect to achieve similar financial results.

*Applicable Law - Fraud*

In order to prevail on their fraud claims, the Willis appellants were required to present evidence that Kwik and Ellis made material representations that were false, that the Willis appellants relied upon those representations, and that they suffered damage as a result. *See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011). The trial court's directed verdict was proper if the Willis appellants failed to present evidence raising a fact issue essential to their right of recovery, or if the Willis appellants admitted or the evidence conclusively established a defense to their cause of action. *See Hunter v. PriceKubecka, PLLC*, 339 S.W.3d 795, 802 (Tex. App.—Dallas 2011, no pet.) (citing *Fin. Review Servs.*, 29 S.W.3d at 77).

*Analysis of Fraud Issues*

At trial, Mitzi Willis testified that when she became interested in purchasing a dry cleaning facility, she contacted Henson. Henson met with Dr. and Mrs. Willis, providing them with a projected pro forma for a dry cleaning supercenter and actual financial results from similarly situated dry cleaning businesses. Mitzi Willis testified that she signed a contract of sale for the purchase of a dry cleaning facility based upon representations by Henson and documents he had provided to her. She did not testify that Henson or Ellis told her the price charged for the dry cleaning facility was fair, reasonable, and supported by a valid appraisal. Instead, she testified that she did not negotiate the price; she was told the price was $1,674,805, take it or leave it. The Willis appellants do not point to any evidence they introduced raising a fact issue that Kwik or Ellis made false representations that the price charged for their dry cleaning center was fair, reasonable, and supported by a valid appraisal, and that the Willis appellants relied upon such representations. *See Italian Cowboy*, 341 S.W.3d at 337. As a result, we conclude the trial court did not err in granting a directed verdict in favor of Kwik and Ellis on this issue.

With respect to revenue projections, Mitzi Willis testified that she is an attorney and she conducted her own due diligence about the purchase of the dry cleaning facility. She testified that she prepared her own projections and submitted her projections to the lender. She acknowledged that her friend Marsha Foulks, also an attorney, and Lila S. Husband, a certified public accountant, also helped her in some capacity. The contract of sale contains acknowledgments that the seller had not provided any guaranteed sales, income, or expense projections, and that any statements by the seller, its agents, or employees regarding the property, its location, projected income, and profitability were expressions of mere opinion. Mitzi Willis initialed each of the acknowledgments. Mitzi Willis also testified that she did not recall meeting or talking to Ellis prior to signing the contract of sale, and she conceded that Ellis did not make any representations to her and her husband regarding the price of the dry cleaning facility or the revenue projections. The Willis appellants do not identify any evidence that Kwik or Ellis made false representations that the revenue projections contained in the pro forma were made in accordance with industry standards, or that the Willis appellants could expect to achieve similar financial results. Nor do they identify any evidence that the Willis appellants relied upon such representations. *See Italian Cowboy*, 341 S.W.3d at 337.

Consequently, we conclude that the trial court did not err by granting a directed verdict in favor of Kwik and Ellis and against the Willis appellants on their claims for fraudulent misrepresentations. We overrule the Willis appellants' second and third issues.

### III. THE KWIK AND ELLIS APPEAL

#### A. BACKGROUND

Bill Lofton (father) and James Lofton (son) wanted to own a business together and became interested in acquiring and operating an automobile lube and tune center. James Lofton's father-in-law owned an independent lube and tune center in Oklahoma, and James knew

that it was a fairly successful business. Also, James saw a sign advertising a Kwik lube and tune center for sale in Caldwell, Texas. When James checked on the lube and tune center that was for sale, he met Randy Doonan, Ellis's son-in-law. Doonan set up an appointment for the Loftons to meet Ellis. After talking with Ellis and the owners of several Kwik lube and tune centers, the Loftons signed a contract of sale and paid Kwik the sum of $1,384,819.06 for the purchase of a Kwik lube and tune center to be built in College Station, Texas. The Loftons formed two business entities—Rock Prairie Holdings, Ltd. to own the real estate, and Centex Kwik Care, Inc. to operate the business. Kwik built and equipped the lube and tune center in College Station, Texas, but the center did not generate the revenue expected by the Lofton plaintiffs.

The Lofton plaintiffs sued Kwik, Ellis, and several other defendants, claiming fraud, fraudulent concealment, conspiracy, and violations of several statutes. The trial court's orders partially granted Ellis and Kwik's motion for summary judgment and motion for directed verdict and dismissed most of the Lofton plaintiffs' claims against Ellis and Kwik. The only questions submitted to the jury were their common law and statutory fraud claims based on Ellis's claimed statement that "the price charged for the Centex Service Center was fair, reasonable, and supported by a valid appraisal." The jury found that Ellis and Kwik committed common law fraud and statutory fraud against the Lofton plaintiffs, and awarded the Lofton plaintiffs damages in the amount of $554,819.06. The trial court denied Kwik and Ellis's amended motion for judgment notwithstanding the verdict and alternative motion for new trial and entered a final judgment based upon the jury's verdict.

### B. STANDARD OF REVIEW

A judgment notwithstanding the verdict (JNOV) is proper when (1) the evidence is conclusive and one party is entitled to judgment as a matter of law, or (2) a legal principal precludes recovery. *Hunter*, 339 S.W.3d at 806; *Sheehan v. Adams*, 320 S.W.3d 890, 895 (Tex.

–14–

App.—Dallas 2010, no pet.); *see* TEX. R. CIV. P. 301. We review a trial court's decision to grant or deny a motion for JNOV under the legal sufficiency standard of review. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005); *Helping Hands Home Care, Inc. v. Home Health of Tarrant Cnty., Inc.*, 393 S.W.3d 492, 515 (Tex. App.—Dallas 2013, pet. denied). Under that standard, we consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *City of Keller*, 168 S.W.3d at 822. We credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *Id.* at 827. A jury's verdict or finding may be based on inferences that are fairly drawn from the facts in evidence. *Sheehan*, 320 S.W.3d at 895. "A vital fact, however, may not be established by piling inference upon inference." *Id.* If more than a scintilla of probative evidence supports the finding, the legal sufficiency challenge fails. *Id.* In contrast, evidence that creates no more than "a mere surmise or suspicion of its existence" is only a scintilla and, thus, no evidence. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

### C. KWIK'S AND ELLIS'S FIRST ISSUE

In their first issue on appeal, Kwik and Ellis contend the trial court erred in denying their amended motion for JNOV because: (1) "fair" and "reasonable" are non-actionable statements of opinion as a matter of law; (2) there is no evidence to support the jury's finding that Ellis fraudulently made the representation; (3) there is no evidence that Ellis represented that the price charged was supported by a valid appraisal or that the price was not, in fact, supported by a valid appraisal; and (4) the Lofton plaintiffs suffered no damages because the evidence established they received property valued at a sum equal to or greater than what they paid in the transaction.

–15–

*Applicable Law*

**1. Common Law Fraud**

The elements of common law fraud are (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made the representation recklessly without knowledge of its truth; (4) the speaker made the representation with the intent that the other party would act on it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *Italian Cowboy*, 341 S.W.3d at 337; *O'Brien v. Daboval*, 388 S.W.3d 826, 840 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

**2. Statutory Fraud**

Section 27.01(a) of the Texas Business and Commerce Code creates a statutory cause of action for fraud in a real estate transaction. *See* TEX. BUS. & COM. CODE ANN. § 27.01(a) (West 2009). The elements of statutory fraud are (1) a false representation of a past or existing material fact; (2) made to induce a person to enter into a contract; (3) which was relied upon by that person in entering into that contract. *Id.* The statutory cause of action differs from the common law only in that it does not require proof of knowledge or recklessness as a prerequisite to the recovery of actual damages. *See Lindley v. McKnight*, 349 S.W.3d 113, 128 (Tex. App.—Fort Worth 2011, no pet.).

**3. Representation Of Fact Or Opinion**

The first element of both a common law and statutory fraud claim is that there is a representation of a material fact. *Transp. Ins. Co. v. Faircloth*, 898 S.W.2d 269, 276 (Tex. 1995); *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983). "Material means a reasonable person would attach importance to and would be induced to act on the information in determining his choice of actions in the transaction in question." *Smith v. KNC Optical, Inc.*, 296 S.W.3d 807, 812 (Tex. App.—Dallas 2009, no pet.) (quoting *American Med. Int'l, Inc. v.*

*Giurintano*, 821 S.W.2d 331, 338 (Tex. App.—Houston [14th Dist.] 1991, no writ)). A pure expression of opinion is not a representation of material fact and is not an actionable basis for a fraud claim. *Italian Cowboy*, 341 S.W.3d at 337–38. Generally, expressions of opinion about monetary value are not representations of fact which give rise to an action for fraud. *Jones v. Thompson*, 338 S.W.3d 573, 585 (Tex. App.—El Paso 2010, pet. denied) (citing *McCollum v. P/S Investments, Ltd.*, 764 S.W.2d 252, 254 (Tex. App.—Dallas 1988, writ denied)). "Whether a statement is an actionable statement of 'fact' or merely one of 'opinion' often depends on the circumstances in which a statement is made." *Italian Cowboy*, 341 S.W.3d at 338 (quoting *Faircloth*, 898 S.W.2d at 276). Relevant circumstances include the statement's specificity, the speaker's knowledge, the comparative levels of the speaker's and hearer's knowledge, and whether the statement relates to the present or the future. *See Faircloth*, 898 S.W.2d at 276; *see also Italian Cowboy*, 341 S.W.3d at 338 ("Special or one-sided knowledge may help lead to the conclusion that a statement is one of fact, not opinion.").

*Analysis*

### 1. Whether Ellis Said Price Was Fair, Reasonable, and Supported by a Valid Appraisal

The Loftons claim that Ellis made a material misrepresentation that the price charged for the Centex Service Center was fair, reasonable, and supported by a valid appraisal. Kwik and Ellis deny that Ellis made that representation. Instead, they contend the Loftons were given a non-negotiable price for the purchase of a Kwik lube and tune facility in College Station, Texas, and that if any statements were made about price, they were opinions and not actionable.

At trial, Bill Lofton testified that Ellis told them the price was $1.3 million. When asked if the purchase price was negotiable, Bill Lofton testified, "No. We were point-blank told, that's – that's the price. If you want it, you take it or not." On cross examination, Bill Lofton also testified as follows:

–17–

Counsel: My question is: Mr. Ellis never said to you that the price you were being charged for this lube center was fair, correct?

Bill Lofton: I do not believe the statement was ever discussed.

Counsel: He never said it was reasonable, correct?

Bill Lofton: He stated that what to be expected as far as income was reasonable.

Counsel: I'm talking about the price. He never said the price was reasonable, correct?

Bill Lofton: That actual verbiage I do not remember, no sir.

James Lofton agreed with his father that the price they were given was non-negotiable.

However, James Lofton also testified:

Counsel: Now, let's talk about this price. One of the allegations in this lawsuit is, there's a lie. That Mr. Ellis said that the price was valid, reasonable, fair and supported by an appraisal. That is not true, is it? He never said that, did he?

James Lofton: Yes sir, I believe he did. He said he validated the price of the store right here.

Counsel: That's not my question. Words coming out of mouth. Mr. Ellis's mouth never uttered the words, this price that I'm charging you is fair. Did he?

James Lofton: I believe he did.

Counsel: The word fair was not used, was it?

James Lofton: I don't have a tape recorder, sir, to – to say that. But it - those - that comment, in some form, is what I heard. That's what gave me the assurance.

* * *

Counsel: And he told you: This is the price. Take it or leave it. Correct?

James Lofton: Yes, sir.

–18–

| | |
|---|---|
| Counsel: | But he never told you it's fair, correct? |
| Mr. How: | Asked and answered; repetitious, Your Honor. |
| The Court: | Overruled. You may answer. |
| James Lofton: | I believe he said it was a fair price for the results that we would get. |

The Loftons also claim that Ellis represented that the price charged for the Centex Service Center was supported by a valid appraisal. Again, Ellis contends there is no evidence that such a representation was made. At trial, Bill Lofton testified on cross-examination that he did not recall Ellis ever saying the price was supported by a valid appraisal. James Lofton testified that at the time of the sale, they did not have an appraisal on the store, and he did not recall if the price was based on an appraisal or the pro forma.

In sum, both of the Loftons agreed that the price was nonnegotiable, Bill denied that the claimed representations were made, James testified that Ellis said the price was fair, and both Loftons testified that there was no representation made about an appraisal. As a result, the only evidence of representation made was James Lofton's statement that Ellis said the price was fair.

### 2. Whether Statement Was Opinion Or Fact

Kwik and Ellis contend that any representation Ellis allegedly made was a statement of opinion, or was not known to be false. Citing *Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, Kwik and Ellis argue that pure expressions of opinion are not representations of material facts and cannot be fraudulent misrepresentations as a matter of law. *See Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 163 (Tex. 1995) (Statements by seller's building manager to buyer that the building was "superb," "super fine," and "one of the finest little properties in the City of Austin" were not misrepresentations of material fact, but merely "puffing" or opinion, and thus could not constitute fraud.). But the Loftons argue the *Prudential* case can be distinguished because there was no evidence that Prudential actually knew the

–19–

building contained asbestos when Prudential's building manager made the representations. *Id*. at 162. The Loftons contend that in this case, Ellis actually knew, or should have known, that the purchase price for the Centex Service Center was substantially inflated when he made the representation that the price charged was fair and reasonable.

The Loftons also argue that other circumstances are relevant to our determination of whether the statement is an actionable representation of fact as opposed to opinion, such as the speaker's knowledge, and the comparative levels of the speaker's and the hearer's knowledge.

Generally, statements about value are expressions of opinion and are not fraudulent misrepresentations as a matter of law. *See McCollum*, 764 S.W.2d at 254. An exception exists, however, when the person giving the opinion has knowledge superior to that of the person relying upon the opinion, as, for example, when the facts underlying the opinion are not equally available to both parties. *Id*. "If the parties have equal means of knowledge and no artifice or fraud has prevented the person to whom the representation was made from making an examination and forming a judgment in respect to the matter, the representation is to be regarded as a mere expression of opinion. Statements which frequently come within this rule are those concerning value." *Id*. at 255 (quoting *Guitar Trust Estate v. Boyd*, 120 S.W.2d 914, 918 (Tex. Civ. App.—Eastland 1938, no writ)).

Both of the Loftons testified they had no previous experience in the lube and tune industry, and no knowledge of how to operate a lube and tune facility. Bill Lofton testified that he did not do any independent due diligence before signing the contract for sale. James Lofton testified that his knowledge of the business came from asking his father-in-law questions and from talking with owners of other Kwik lube and tune centers. They contend that because of Ellis's knowledge and expertise in the lube and tune industry, Ellis's representation that the price for the Centex Service Center was fair should be deemed an actionable statement of fact, and not

merely an opinion because Ellis knew the purchase price was substantially inflated. The Loftons claim that the fact that Kwik subscribed to, and advertised in, *National Oil & Lube News*, was evidence that Ellis knew or should have known the purchase price was substantially inflated. As evidence of Ellis's expertise in the industry, the Loftons rely on Ellis's testimony that he has been in the business for over thirty years and has built close to five hundred lube and tune centers in ten states, including over one hundred lube and tune centers in the Dallas Fort Worth area.

Ellis contends, however, that he does not have special knowledge of the lube and tune industry as a whole, and does not have any special knowledge of any lube centers other than the centers built by Kwik. Ellis testified, and the Loftons confirmed, that the Lofton plaintiffs were provided financial statements for various Kwik lube and tune centers and were introduced to owners so that they could discuss the centers' performance.

Both parties discuss the *Transport Insurance Company v. Faircloth* case in which Faircloth alleged that Transport made a false statement of fact about the value of Faircloth's claim when it stated that a $250,000 settlement offer in a wrongful death case was a "great deal," "top dollar," and "real good for a minor." *See Faircloth*, 898 S.W.2d at 276. The court explained, "[t]he mere fact that Transport was aware of opinions giving a higher value to Faircloth's claim than it offered to settle with her is no evidence that an opinion by any Transport agent about $250,000 being 'top dollar' was false. Transport could disagree with its consultants about the value of the claim without being guilty of fraud." *Id*. at 277. Kwik and Ellis contend that the *Faircloth* court's reasoning applies here; others could disagree with Ellis's opinion without Ellis being guilty of fraud. The Loftons distinguish *Faircloth* because in *Faircloth*, there was no evidence to identify the speaker who actually made the statement. The issue there and here, however, was not who made the statement, but whether the statement was of an opinion or fact and whether the agent knew the statement was false when it was made. *Id*. at 276.

Bill Lofton testified that he did not recall a discussion that the price was fair and reasonable, and James Lofton testified that he believed Ellis made a comment, "in some form," that the price charged for the Centex Service Center was fair. Additionally, James Lofton talked to his father-in-law and other Kwik lube and tune center owners. There is no evidence that the facts about the price were not equally available to the Loftons to support the application of an exception to the rule that value statements are expressions of opinion. Consequently, on this record, the alleged statement that the price charged for the Centex Service Center was fair and reasonable was the statement of an opinion and not a representation of fact.

Reviewing this record in the light most favorable to the jury's verdict, the most specific statement the Loftons' testimony supported was that Ellis told James Lofton that "it was a fair price for the results we would get." As a result, we conclude that no more than a scintilla of probative evidence supports the findings in question one (common law fraud) and question two (statutory fraud) that Ellis made a misrepresentation of material fact to the Lofton plaintiffs that the price charged for the Centex Service Center was fair and reasonable and supported by a valid appraisal. Because the evidence in support of the Loftons' common law fraud and statutory fraud claims is legally insufficient, we conclude the trial court erred in denying the amended motion for judgment notwithstanding the verdict in favor of Kwik and Ellis. *See Hunter*, 339 S.W.3d at 806.

### D. KWIK'S AND ELLIS'S SECOND ISSUE

In their second issue on appeal, Kwik and Ellis contend the trial court erred in denying their alternative motion for new trial because the evidence established that the damages awarded by the jury were manifestly excessive. In light of our resolution of Kwik and Ellis's issue regarding their amended motion for judgment notwithstanding the verdict, we need not address their issue regarding their alternative motion for new trial. *See* TEX. R. APP. P. 47.1.

## IV. THE LOFTONS' CROSS APPEAL

The Loftons present a cross-point in their brief on appeal. They contend that the trial court erred by granting Kwik and Ellis's motion for directed verdict as to their claims for fraud by misrepresentation that (1) the sales projections in the pro forma were valid, attainable, and reasonable, and (2) business growth and the value of the product would continue to increase; and their claims for fraud by concealment as a result of Kwik and Ellis's failure to disclose that (1) Kwik had a financial interest in the required Pennzoil products contract and received the consideration instead of the Lofton plaintiffs, and (2) the Pennzoil contract had substantial penalties unless production quotas were achieved. But the Loftons did not file a notice of appeal and any party seeking to alter a trial court's judgment or other appealable order must file a notice of appeal. *See* TEX. R. APP. P. 25.1(c); *see also Bakhtari v. Estate of Dumas*, 317 S.W.3d 486, 490 (Tex. App.—Dallas 2010, no pet.). Unless a party seeking to alter a trial court's judgment files a notice of appeal of its own, the appellate court is not permitted to grant more favorable relief than the trial court except for just cause. *See* TEX. R. APP. P. 25.1(c); *see also Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 171 (Tex. 2004); *Small v. Specialty Contractors, Inc.*, 310 S.W.3d 639, 643 (Tex. App.—Dallas 2010, no pet.) (without filing notice of appeal, party may not obtain more favorable relief than obtained at trial court). Consequently, the Loftons' cross-issue is overruled.

## V. CONCLUSION

We resolve the issues raised by Mitzi Willis, Dr. Charles E. Willis, II, and Will-Wall Enterprises, Inc. against them. We do not address the issue raised on cross-appeal by Bill Lofton, James Lofton, Rock Prairie Holdings, Ltd., and Centex Kwik Care, Inc. We resolve the first issue raised by Kwik and Ellis in their favor.

Based on our conclusions, we affirm the trial court's judgment with respect to Mitzi Willis, Dr. Charles E. Willis, II, and Will-Wall Enterprises, Inc.  We also affirm the trial court's judgment with respect to the issues raised on cross-appeal by Bill Lofton, James Lofton, Rock Prairie Holdings, Ltd., and Centex Kwik Care, Inc.  We reverse the trial court's judgment with respect to Kwik and Ellis, and render judgment that Bill Lofton, James Lofton, Rock Prairie Holdings, Ltd., and Centex Kwik Care, Inc. take nothing on their claims against Kwik and Ellis.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

130054F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

KWIK INDUSTRIES, INC., AND RAY
ELLIS, Appellants/Cross-Appellees

No. 05-13-00054-CV      V.

ROCK PRAIRIE HOLDINGS, LTD.,
CENTEX KWIK CARE, INC., BILL
LOFTON, AND JAMES LOFTON,
Appellees/Cross-Appellants

WILL-WALL ENTERPRISES, INC.,
MITZI WILLIS, AND DR. CHARLES E.
WILLIS, II, Appellants

No. 05-13-00054-CV      V.

KWIK INDUSTRIES, INC., AND RAY
ELLIS, Appellees

On Appeal from the 162nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. 05-10901.
Opinion delivered by Justice Lang-Miers.
Justices Francis and Myers participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED** in part and **REVERSED** in part. We **AFFIRM** the trial court's judgment with
respect to Will-Wall Enterprises, Inc., Mitzi Willis, and Dr. Charles E. Willis, II. We **AFFIRM**
the trial court's judgment with respect to issues raised on cross-appeal by Rock Prairie Holdings,
Ltd., Centex Kwik Care, Inc., Bill Lofton, and James Lofton. We **REVERSE** the trial court's
judgment with respect to Kwik Industries, Inc. and Ray Ellis, and **RENDER** judgment that Rock
Prairie Holdings, Ltd., Centex Kwik Care, Inc., Bill Lofton, and James Lofton take nothing from
Kwik Industries, Inc. and Ray Ellis.

It is **ORDERED** that appellants/cross-appellees Kwik Industries, Inc. and Ray Ellis
recover their costs of this appeal from appellees/cross-appellants Rock Prairie Holdings, Ltd.,
Centex Kwik Care, Inc., Bill Lofton, and James Lofton, and appellants Will-Wall Enterprises,
Inc., Mitzi Willis, and Dr. Charles E. Willis, II.

Judgment entered this 30th day of March, 2015.