

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00351-CV

_____

IN THE INTEREST OF E.M., MINOR CHILD

---

On Appeal from the 442nd District Court
Denton County, Texas
Trial Court No. 14-00945-393

---

Before Kerr, Pittman, and Bassel, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

### I.  INTRODUCTION

In this suit affecting the parent-child relationship, the record reflects that M.M. (Dad) and D.W. (Mom) are both good parents who are and want to continue to be significantly involved in the life of their daughter, E.M. (Daughter).  The record also reflects that Daughter is a healthy, thriving young child.  Mom and Dad were divorced in 2015.  In 2017, Dad filed a petition to modify the possession order contained in the original decree of divorce to obtain a more equal division of time.  After a hearing, the trial court denied the petition and awarded Mom $18,926.50 in attorney's fees.

Dad raises three issues on appeal.  We affirm.

### II.  BACKGROUND

The decree entered in Mom and Dad's divorce proceeding followed a three-day bench trial.  At the time, they had one child, Daughter, who was not quite two years old.  The final decree of divorce appointed Mom and Dad as Daughter's joint managing conservators, awarded Mom the exclusive right to designate Daughter's residence within Denton County and contiguous counties, and provided a custom possession schedule[1] that would automatically change to a standard possession schedule when Daughter began kindergarten.  The post-kindergarten possession schedule envisioned Dad would have Daughter on the first, third, and fifth weekends

---

[1]Under the initial possession schedule, Dad had possession from 4:00 p.m. on Friday until 4:00 p.m. on Sunday on the first, third, and fifth weekends each month, as well as from 12:00 p.m. until 5:00 p.m. on Tuesday and Thursday each week.

each month; the second and fourth Wednesday each month; and every Thursday. Finally, the decree ordered Dad to pay $1,710 per month in child support.

Slightly more than two years after entry of the original divorce decree, Dad filed a petition to modify the possession order. Under Dad's proposed plan, possession would essentially be equalized 50/50, with Dad having possession every Monday and Tuesday, Mom having possession every Wednesday and Thursday, and Mom and Dad alternating possession Friday and weekends. Dad asserted that modification was warranted because since the divorce, Mom had remarried, had moved, and was pregnant, and Daughter was almost school-aged. Dad also contended that the proposed modification was in Daughter's best interest. In an amended pleading, Dad also asserted that he had been promoted in his job, which gave him greater scheduling flexibility to care for Daughter; that he had moved to a "five-star" neighborhood in Frisco, Texas; that Mom had recently given birth to Daughter's new half-sibling and the baby had some complications; and that Mom works 50% more than she did at the time of the prior possession order. Dad also sought to modify or eliminate child support in the event that possession was equalized between him and Mom.

In a letter dated October 13, 2017, Mom's counsel informed Dad's counsel that Mom would agree to resolve the modification suit by immediately beginning the post-kindergarten standard possession schedule that was going to commence on May 1, 2018. Dad's counsel countered with a letter dated December 22, 2017, which

included an "Irrevocable Mediation Settlement Agreement" that offered to settle if Mom would agree to Dad's proposed plan. The parties did not reach an agreement, so they continued to litigate, which included Mom and Dad each sitting for a deposition.

The modification hearing lasted one day. Mom and Dad each testified, and their counsels testified on the issue of attorney's fees. Each side admitted eight exhibits into evidence. The trial court ruled from the bench that it was denying Dad's modification request because, based on the testimony and evidence, the trial court did not believe that there was a material and substantial change and that modification was not in Daughter's best interest. The trial court also indicated that it would award Mom $18,926.50 in attorney's fees, which was the amount of attorney's fees Mom had incurred since the date of her settlement offer. On August 30, 2018, the trial court signed a written order denying the modification request, finding that there has been no material and substantial change regarding the circumstances of Daughter, Mom, or Dad that would warrant a modification, and awarding Mom $18,926.50 in attorney's fees.

Dad timely filed a request for findings of fact and conclusions of law, and the trial court filed findings of fact and conclusions of law. The relevant findings were that no material and substantial change had occurred warranting modification, that denying Dad's modification request was in Daughter's best interest, that Mom had incurred $18,926.50 in reasonable and necessary attorney's fees based in part on the

4

nature of Dad's modification request and his conduct, and that good cause existed to award Mom $18,926.50 in attorney's fees. Dad timely filed a request for additional findings of fact and conclusions of law, seeking numerous findings that were not included in the trial court's original findings. The trial court did not file any additional findings of fact or conclusions of law.

Although represented by counsel at trial, the trial court granted Dad's counsel's motion to withdraw, and Dad filed a pro se appeal.

## III. THE TRIAL COURT EXHIBITED NO FAVORITISM OR PARTIALITY IN THE CONDUCT OF THE TRIAL

In his first issue, Dad asserts that the trial court showed favoritism and partiality toward Mom by (1) assisting her in formulating an unobjectionable question following Dad's objection; (2) sustaining Mom's objection to a question as a compound question, only to later acknowledge that it may not be compound but that it was still objectionable; (3) inconsistently ruling on objections by sustaining Mom's objections but overruling Dad's; and (4) failing to file additional findings and conclusions when Dad requested them.

"All parties have a right to a fair and impartial trial before a neutral judge." *Ellason v. Ellason*, 162 S.W.3d 883, 887 (Tex. App.—Dallas 2005, no pet.). "One of the fundamental components of a fair trial is a neutral and detached judge." *Markowitz v. Markowitz*, 118 S.W.3d 82, 86 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (op. on reh'g). Therefore, a judge should not act as an advocate for or

5

adversary toward any party. *Id.* "To reverse a judgment on the ground of improper conduct or comments of the judge, we must find (1) that judicial impropriety was in fact committed, and (2) probable prejudice to the complaining party." *Metzger v. Sebek*, 892 S.W.2d 20, 39 (Tex. App.—Houston [1st Dist.] 1994, writ denied).

But "'judicial rulings alone almost never constitute a valid basis for a bias or partiality motion,' and opinions the judge forms during a trial do not necessitate recusal 'unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.'" *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240 (Tex. 2001) (quoting *Liteky v. United States*, 510 U.S. 540, 555, 114 S. Ct. 1147, 1157 (1994)). Indeed, "[i]t is only in the rarest circumstances . . . that judicial rulings demonstrate the degree of favoritism or antagonism necessary to show that a fair and impartial trial was not possible." *Ellason*, 162 S.W.3d at 887. Thus, "[r]ulings with which a party disagrees are best brought as grounds for appeal rather than evidence of judicial bias." *Id.*; *cf. In re Davila*, 631 S.W.2d 723, 725 (Tex. 1982) ("Appellate courts, through review of proceedings, provide for the correction of most departures from judicial standards."). "[T]o preserve for appellate review a complaint about a trial judge's comments during trial, counsel must object or otherwise bring the complaint to the trial judge's attention so the judge has an opportunity to correct the error." *Hoang v. State*, 997 S.W.2d 678, 680 (Tex. App.—Texarkana 1999, no pet.).

Nothing in the record even hints that the trial court exhibited or harbored bias or prejudice against Dad. Allegations that a judge has put his or her thumb on the

scale should not be made simply because a party disagrees with the judge's rulings. Here, Dad disagrees with the trial court's specific rulings and the result she reached, but the record provides no basis to question the court's impartiality. To demonstrate this fact, we will briefly address each of Dad's complaints.

## A. Dad's First Complaint

Dad's first complaint is that the trial court "assisted" Mom's attorney in formulating a question that would address Dad's counsel's objection. This occurrence was of so little moment that Dad's counsel did not object to the trial court's action or bring any complaint to the trial court's attention. Thus, Dad did not preserve error for our review. *See Matbon, Inc. v. Gries*, 288 S.W.3d 471, 490 (Tex. App.—Eastland 2009, no pet.) (holding parties "failed to preserve error on this issue [of judicial favoritism] because they did not object to the [judge's] conduct at the time that it occurred"); *Markowitz*, 118 S.W.3d at 87 ("A party must object to a court's improper comment when it occurs in order to preserve error for appellate review. . . . Therefore, no error is preserved for our review regarding the trial court's allegedly improper courtroom comments.").

But even if preserved, the isolated comment does not demonstrate bias or favoritism because a trial court is permitted to ask questions of a witness during a bench trial. *Henderson-Bridges, Inc. v. White*, 647 S.W.2d 375, 377 (Tex. App.—Corpus Christi 1983, no writ) (holding "the trial judge did not exceed his authority in examining the witnesses"). Indeed, the Beaumont Court of Appeals has specifically

7

affirmed that a trial court's role in questioning witnesses is of particular importance during a bench trial when the best interest of children is at stake:

> It is true that the trial judge asked many more questions than either of the attorneys. We, however, find no error. The court is performing its duty by putting competent and material questions to a witness in order to clarify testimony or to elicit testimony that has not otherwise been brought out. *It is especially proper, where the court is the trier of fact, in a case involving the best interest of children.* The court should have all the facts possible in order to make an intelligent decision. If the attorneys fail to develop the facts, it is the trial judge's responsibility to the children to attempt do so himself. The trial judge did not err.

*Trahan v. Trahan*, 732 S.W.2d 113, 114–15 (Tex. App.—Beaumont 1987, no writ) (emphasis added) (citation omitted). Thus, the trial court's effort to facilitate the flow of information it needed to resolve this case not only fails to hint at bias or prejudice, it was a perfectly appropriate act.

## B. Dad's Second Complaint

Dad's second complaint is from an exchange in which Mom's counsel objected to a question asked by Dad's counsel as being a compound question. The trial court sustained the objection, but when Dad's counsel challenged the ruling, the trial court conceded it was not a compound question but maintained that it was still an "objectionable question." Dad contends that the trial court's candid acknowledgment that it may have made an error suggests bias or prejudice. But our review of the transcript reveals that the trial court permitted Dad's counsel to ask follow-up questions that elicited the same information he sought by the question to which the objection was sustained, rendering any error that might have occurred from a simple

8

erroneous ruling harmless. *See Drake v. State*, 860 S.W.2d 182, 186 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd) (holding the trial court's erroneous ruling sustaining an objection during closing argument "was harmless, because appellant was allowed to repeat his argument, without objection immediately following the trial court's ruling"). Again, nothing in this action suggests bias or prejudice.

## C. Dad's Third Complaint

Dad's third complaint—that the trial court was inconsistent by sustaining one objection by Mom's counsel and overruling two objections by Dad's counsel—likewise does not demonstrate bias or partiality because the mere fact that the trial court sustained some of Mom's objections and overruled some of Dad's does not demonstrate deep-seated bias. *See In re A.E.A.*, 406 S.W.3d 404, 421 (Tex. App.—Fort Worth 2013, no pet.); *Markowitz*, 118 S.W.3d at 88 (concluding examples of purported "biased rulings" did not demonstrate "deep-seated favoritism or antagonism that would make fair judgment impossible").

In the context of a federal criminal case, the Fifth Circuit Court of Appeals rejected a similar allegation of bias from the defendant when he complained that the trial judge had sustained the government's hearsay objections and overruled his own:

> [Defendant] contends that Judge Cobb admitted hearsay evidence offered by the government on the ground that it was not hearsay because it was not offered for the truth of the matter asserted. Judge Cobb admitted the evidence with instructions limiting its use. [Defendant] argues that he was unsuccessful in obtaining similar treatment when he attempted to offer other evidence which Judge Cobb ruled was hearsay in part because it was offered for the truth of the

9

matter asserted. [Defendant] claims that this alleged discrepancy reflects Judge Cobb's bias against [Defendant].

[Defendant] fails to show, however, that Judge Cobb's rulings were, in fact, inconsistent. [Defendant] does not explain why any exceptions to the Hearsay Rule should apply to the testimony of defense witnesses to statements by third parties that Judge Cobb excluded as hearsay. Moreover, even if we assume, *arguendo,* that these rulings were inconsistent, [Defendant] cites only two instances where Judge Cobb ruled inconsistently on hearsay evidence. Given the fact that the trial lasted for five weeks, these two instances do not rise to the level of judicial bias.

*United States v. Wade*, 931 F.2d 300, 303 (5th Cir. 1991). The same reasoning applies to this case.

Like in *Wade*, here Dad offers only two instances of allegedly inconsistent rulings out of a 182-page reporter's record and then he fails to explain how these rulings were inconsistent. Indeed, our review of the reporter's record reveals no bias or favoritism because the trial court on numerous other occasions sustained Dad's objections and overruled Mom's objections.

Accordingly, the allegedly inconsistent rulings reveal no deep-seated bias or antagonism that would have made a fair judgment impossible.

## D. Dad's Fourth Complaint

Lastly, Dad complains that the trial court improperly failed to file additional findings of fact and conclusions of law after he had made a timely request. For a final time, Dad's argument points to no act so egregious that it suggests bias or prejudice much less one that suggests harm.

10

If findings of fact and conclusions of law are properly requested, the trial court must prepare them. *See* Tex. R. Civ. P. 296–297; *Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996). If a party properly requests additional findings and conclusions and the court fails to make such findings, that failure is tantamount to refusal. *See* Tex. R. Civ. P. 298; *Rafferty v. Finstad*, 903 S.W.2d 374, 376 (Tex. App.—Houston [1st Dist.] 1995, writ denied). But if the record shows, however, that the complaining party did not suffer injury, the failure to make such additional findings does not require reversal. *Tamez v. Tamez*, 822 S.W.2d 688, 692 (Tex. App.—Corpus Christi 1991, writ denied); *see also Huber v. Buder*, 434 S.W.2d 177, 181 (Tex. App.—Fort Worth 1968, writ ref'd n.r.e.). That is, the error is harmless when it does not prevent the requesting party from properly presenting its case to the court of appeals or supreme court. *Graham Cent. Station, Inc. v. Peña*, 442 S.W.3d 261, 263 (Tex. 2014).

Here, Dad presents no argument as to how the trial court's failure to make additional findings caused him to suffer injury, and we cannot discern any injury. Thus, any error by the trial court's failure to make additional findings is harmless and does not require reversal. Accordingly, the failure to file additional findings of fact and conclusions of law does not support Dad's bias and favoritism claim. *See Metzger*, 892 S.W.2d at 39.

None of Dad's complaints demonstrate judicial bias, favoritism, or such deep-seated antagonism against him that would have made a fair judgment impossible; we

11

overrule Dad's first issue. *See A.E.A.*, 406 S.W.3d at 421; *Ellason*, 162 S.W.3d at 887–88; *Markowitz*, 118 S.W.3d at 87–88.

## IV. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY FAILING TO MODIFY THE POSSESSION ORDER

In his second issue, Dad argues that the trial court abused its discretion by failing to modify the possession order because the evidence was sufficient to demonstrate a material and substantial change in circumstances and that modification was in Daughter's best interest. Because the evidence is sufficient to support the trial court's finding that there had been no material and substantial change, and alternatively because there is sufficient evidence for the trial court to find that modification was not in Daughter's best interest, we conclude that the trial court did not abuse its discretion.

### A. Standard of Review

We review a trial court's decision regarding modification of orders governing managing conservatorship and possession of or access to the child for an abuse of discretion. *In re T.D.C.*, 91 S.W.3d 865, 872 (Tex. App.—Fort Worth 2002, pet. denied) (op. on reh'g); *see In re A.B.H.*, 266 S.W.3d 596, 601 (Tex. App.—Fort Worth 2008, no pet.) (op. on reh'g) (applying standard). A trial court abuses its discretion if it acts arbitrarily or unreasonably or does not analyze or apply the law properly. *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011). Whether the evidence supporting the decision is

legally and factually sufficient is relevant in deciding whether the trial court abused its discretion. *T.D.C.*, 91 S.W.3d at 872.

The person seeking to modify an existing custody order bears the burden to prove that a modification would be in the child's best interest and that the circumstances of the child, a conservator, or other party affected by the custody order have materially and substantially changed since the previous custody order. Tex. Fam. Code Ann. § 156.101; *In re J.R.P.*, 526 S.W.3d 770, 778 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

When a party challenges the legal sufficiency of an adverse finding on which he had the burden of proof, he must demonstrate on appeal that the evidence conclusively established the facts in his favor as a matter of law. *Dow Chem.*, 46 S.W.3d at 241. We first examine the record for evidence to support the finding. *Hunter v. PriceKubecka, PLLC*, 339 S.W.3d 795, 807 (Tex. App.—Dallas 2011, no pet.). If there is no evidence to support the finding, we then examine the entire record to determine if the contrary position is established as a matter of law. *Id.* We indulge every reasonable inference to support the judgment, crediting favorable evidence if a reasonable fact-finder could and disregarding contrary evidence unless a reasonable fact-finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). When a party attacks the factual sufficiency of an adverse finding on an issue on which he has the burden of proof, he must demonstrate on appeal the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem.*, 46 S.W.3d at 242. We

must consider and weigh all of the evidence; we can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *See Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986).

Here, the trial court issued findings of fact and conclusions of law. A trial court's findings of fact have the same force and dignity as a jury's answers to jury questions, and we review the legal and factual sufficiency of the evidence supporting those findings using the same standards that we apply to jury findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *see also MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 663 n.3 (Tex. 2009). When the appellate record contains a reporter's record, findings of fact on disputed issues are not conclusive and may be challenged for evidentiary sufficiency. *Super Ventures, Inc. v. Chaudhry*, 501 S.W.3d 121, 126 (Tex. App.—Fort Worth 2016, no pet.). Regarding the terms and conditions of conservatorship, we are mindful that "the trial court is in the best position to observe the credibility and personalities of the witnesses, and, consequently, an abuse of discretion does not occur when a trial court bases its decision on conflicting evidence." *In re R.D.Y.*, 51 S.W.3d 314, 321 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (op. on reh'g).

14

## B. Discussion

### 1. Material and substantial change

"In a modification suit, the threshold inquiry is whether the moving party has met the burden of demonstrating a material and substantial change." *In re T.M.P.*, 417 S.W.3d 557, 563 (Tex. App.—El Paso 2013, no pet.); *see Smith v. Karanja*, 546 S.W.3d 734, 738 (Tex. App.—Houston [1st Dist.] 2018, no pet.) ("The change-in-circumstances requirement is a threshold issue for the trial court and is based on a policy of preventing constant re-litigation with respect to children."). In considering whether a material and substantial change of circumstances has occurred, the trial court compares the evidence of the conditions that existed at the time of the entry of the prior order with the evidence of the conditions that existed at the time of the hearing on the petition to modify. *In re W.C.B.*, 337 S.W.3d 510, 514 (Tex. App.—Dallas 2011, no pet.). A fact-finder is not confined to rigid or definite guidelines; instead, the determination is fact specific and must be made according to the circumstances as they arise. *In re A.L.E.*, 279 S.W.3d 424, 428 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

Dad lists several facts adduced at trial that he believes constitute material and substantial changes that warrant modification of the possession order: (1) Mom is working 50 hours more each month than at the time of the divorce decree and Dad

now travels less and has a more flexible schedule than at the time of the divorce;[2] (2) Mom has remarried and moved into a new house and Dad has moved into a new house; (3) Mom has given birth to a new half-sibling who had a minor health complication;[3] and (4) Daughter is older and has different needs. Certainly, Dad has itemized a number of changes, but it is not the fact of change that drives a modification but whether these changes are material and substantial changes in the parenting arrangement.

Texas courts have deemed the remarriage of one or both parents to be a pertinent factor when determining whether a material and substantial change has occurred. *See In re S.N.Z.*, 421 S.W.3d 899, 909 (Tex. App.—Dallas 2014, pet. denied) (stating "[m]aterial changes may include . . . remarriage by a party"). However, the mere fact that a parent has remarried or moved does not necessarily constitute a material and substantial change. *See Bates v. Tesar*, 81 S.W.3d 411, 430 (Tex. App.—

[2]At the modification hearing, Mom acknowledged that at the time of the divorce decree she worked part time at two hospitals, one of which was out of state, but that she now works full time at one hospital in Texas. Mom testified that while she now works full time, she usually works 24-hour shifts on days when Dad has possession of Daughter. Mom also testified that her two part-time jobs at the time of the divorce were equivalent to her current full-time job. Dad testified that he has received a job promotion since the divorce, which has resulted in a pay increase, less travel, and more scheduling flexibility.

[3]Mom testified that Daughter's half-sibling was born with a condition whereby the child's skull had fused too early in utero so Mom and her new husband had elected to have a surgical procedure and have the new baby wear a helmet to correct the condition. However, Mom testified that the complication was minor, it had been completely resolved with no long-term effects expected, and it had not caused Mom to take substantial time away from Daughter.

16

El Paso 2002, no pet.) ("[W]e do not hold that relocation, regardless of distance, will suffice to establish a material and substantial change in circumstances."); *Belford v. Belford*, 682 S.W.2d 675, 676–77 (Tex. App.—Austin 1984, no writ) (stating that remarriage of both parties and mother's living in another state did not constitute material and substantial change). Dad does not explain how the undisputed fact that he and Mom have each moved since the divorce decree constitutes a material and substantial change. Similarly, Dad does not explain how Mom remarrying constitutes a material and substantial change. *See Bates*, 81 S.W.3d at 430; *Belford*, 682 S.W.2d at 676–77.

"The fact that the children are older, in and of itself, is not a material and substantial change unless changed needs are shown." *In re C.W.J.*, No. 11-17-00085-CV, 2019 WL 1067489, at *7 (Tex. App.—Eastland Mar. 7, 2019, no pet.) (mem. op.). Dad has provided no argument and directed us to no evidence in the record that shows Daughter's needs have changed. Moreover, the post-kindergarten possession schedule in this case specifically contemplated Daughter getting older and eventually beginning school. Thus, the fact that Daughter is now school-aged is an anticipated rather than changed circumstance and does not undermine the trial court's finding that no material and substantial change had occurred. *Cf. Hoffman v. Hoffman*, No. 03-03-00062-CV, 2003 WL 22669032, at *6 (Tex. App.—Austin Nov. 13, 2003, no pet.) (mem. op.) (holding change of residence "was not a changed circumstance but an

17

anticipated circumstance and addressed in the original agreement[, so] [a]s a result, the move itself cannot be evidence of a material or substantial change in this case").

The birth of Daughter's new half-sibling with an admitted birth complication, albeit a minor one, is perhaps the strongest evidence of a material and substantial change. *See, e.g.*, *Fuentes v. Jasso*, No. 08-03-00109-CV, 2004 WL 1078498, at \*2 (Tex. App.—El Paso May 13, 2004, no pet.) (mem. op.) (concluding there was a "sound basis for a court to find a material and substantial change has occurred in [child's] life" in part because both of his parents had remarried and because "he ha[d] a new half-sister"). But as noted above, Mom testified that the complication was minor, it had been completely resolved with no long-term effects expected, and it had not caused Mom to take substantial time away from Daughter. Mother also testified that the birth of Daughter's half-sibling had a "wonderful impact" on Daughter. And, Dad fails to explain why Daughter's new half-sibling has otherwise created a material and substantial change. *See Files v. Thomasson*, 578 S.W.2d 883, 884–85 (Tex. App.—Houston [14th Dist.] 1979, no writ); *see also Ramos v. Ramos*, 683 S.W.2d 84, 86 (Tex. App.—San Antonio 1984, no writ) (holding the facts that father had remarried, his new wife was pregnant, and they had moved into a new house were neither material nor substantial changes).

Therefore, we hold that the trial court did not abuse its discretion by finding that no material and substantial change had occurred.

## 2. Daughter's Best Interest

Although we hold that the trial court's finding of no material and substantial change of circumstance was not an abuse of discretion, we alternatively hold that the trial court did not abuse its discretion by finding that modification was not in Daughter's best interest, which is an independent basis to overrule Dad's second issue.

In any case involving an issue of possession and access to a child, the child's best interest must always be the primary consideration of the trial court. Tex. Fam. Code Ann. §§ 153.002, 156.101; *see also S.N.Z.*, 421 S.W.3d at 910 ("The focus of the analysis is on the best interest of the child, not the best interest of the parent."). In determining the child's best interest, a court may consider, among other things, the child's desires, the child's current and future emotional and physical needs, any emotional or physical danger to the child, the parental abilities of the individual seeking custody and that person's plans for the child, the stability of the home, acts or omissions by a parent tending to show the existing relationship is not a proper one, and any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (listing factors used for determining best interest of the child). In the context of a custody modification, other factors to consider include the child's need for stability and the need to prevent constant litigation. *In re V.L.K.*, 24 S.W.3d 338, 343 (Tex. 2000).

Mom testified that it was not in Daughter's best interest to spend 50% of her time with Dad because it is important for Daughter to "have a home base and to be -- to not shuffle back and forth as much." Mom testified that it would be best for Daughter—who was about to start kindergarten—to maintain one home with Mom because the current arrangement was working well and because Daughter was doing well. Attempting to show that the requested modification was in Daughter's best interest, Dad testified as follows:

> I believe it gives [Daughter] the opportunity to take from both parents' strengths and weaknesses and to learn and have the opportunity to learn about, you know, both of her parents and be supported by both of her parents who love her.

We conclude that there is sufficient evidence to support the trial court's finding that Dad's requested modification was not in Daughter's best interest. Mom testified that Daughter was currently doing well with no behavioral or developmental issues whatsoever and that a stable home environment was important as Daughter was about to begin kindergarten. Dad's concerns are not invalid, but it was a matter for the trial court's discretion to balance the valid concerns raised by each parent. It is not our role to rebalance a decision that falls within the trial court's discretion. Thus, the trial court did not abuse its discretion by finding that modification was not in Daughter's best interest. *See In re J.E.P.*, 49 S.W.3d 380, 386 (Tex. App.—Fort Worth 2000, no pet.) ("An abuse of discretion does not occur when the trial court bases its decisions on conflicting evidence."); *Roa v. Roa*, 970 S.W.2d 163, 165 (Tex. App.—

20

Fort Worth 1998, no pet.) ("Generally, there is no abuse of discretion when there is some evidence to support the trial court's finding on an issue of fact.").

Accordingly, we overrule Dad's second issue.

## V. ATTORNEY'S FEES AWARD

Dad's third issue challenges the attorney's fees award. The trial court utilized the date of Mom's settlement offer as a line of demarcation from which to measure the amount of fees to award Mom. Dad argues that the trial court improperly considered settlement negotiations in violation of rule 408 when calculating the amount of attorney's fees. Tex. R. Evid. 408. Dad also argues that the trial court lacked authority to award attorney's fees.

### A. Standard of Review and Applicable Law

In a suit affecting the parent-child relationship, "the court may render judgment for reasonable attorney's fees and expenses and order the judgment and postjudgment interest to be paid directly to an attorney." Tex. Fam. Code Ann. § 106.002(a). "The trial court is awarded wide discretion in awarding attorney's fees for nonenforcement modification suits, including modification of conservatorship and child support." *In re M.G.N.*, 491 S.W.3d 386, 409 (Tex. App.—San Antonio 2016, pet. denied) (op. on reh'g). We review the award of attorney fees in a suit affecting the parent-child relationship for an abuse of discretion. *Bruni v. Bruni*, 924 S.W.2d 366, 368 (Tex. 1996); *In re E.R.C.*, 496 S.W.3d 270, 287 (Tex. App.—Texarkana 2016, pet. denied).

Texas Rule of Evidence 408 addresses the admissibility of evidence of compromise and settlement negotiations, specifically prohibiting it in some instances and specifically permitting it in others:

> **(a) Prohibited Uses.** Evidence of the following is not admissible either to prove or disprove the validity or amount of a disputed claim:
>
> > **(1)** furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and
>
> > **(2)** conduct or statements made during compromise negotiations about the claim.
>
> **(b) Permissible Uses.** The court may admit this evidence for another purpose, such as proving a party's or witness's bias, prejudice, or interest, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Tex. R. Evid. 408.

In deciding whether evidence is being impermissibly offered as evidence of a settlement offer or whether it is being offered for some other valid reason, the trial court may properly exercise its discretion, and only when the trial court abuses its discretion will that ruling be disturbed on appeal. *TCA Bldg. Co. v. Nw. Res. Co.*, 922 S.W.2d 629, 636 (Tex. App.—Waco 1996, writ denied).

## B. Analysis

Dad's initial contention that the trial court lacked authority to award Mom's attorney's fees is without merit. Pursuant to the family code, the trial court had the discretion to award Mom's attorney's fees. *See* Tex. Fam. Code Ann. § 106.002(a); *see*

22

*also M.G.N.*, 491 S.W.3d at 409; *In re M.A.N.M.*, 231 S.W.3d 562, 566 (Tex. App.—Dallas 2007, no pet.) (holding no abuse of discretion awarding mother attorney's fees when father's modification suit had requested "expanded standard possession" and "the trial court denied his requests").

Because the trial court had authority to award Mom's attorney's fees and because Dad does not dispute that the trial court had sufficient evidence of Mom's amount of $22,000 in attorney's fees, we assume without deciding that the trial court erred by admitting the settlement offers over Dad's objection, and conclude that the error is not reversible because it did not probably cause the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a). That is, even if the trial court may have improperly used the settlement offer to limit the amount of attorney's fees awarded to Mom—$18,926.50 instead of $22,000—the error helped and did not harm Dad. *Cf. Sterling v. Apple*, 513 S.W.2d 255, 259 (Tex. App.—Houston [1st Dist.] 1974, writ ref'd n.r.e.) (overruling challenge to trial court's erroneous calculation because "if this was error on the part of the trial court it benefited and did not harm appellants").

Accordingly, we overrule Dad's third issue.

## VI. CONCLUSION

Having overruled Dad's three issues, we affirm the trial court's judgment.

/s/ Dabney Bassel
Dabney Bassel
Justice

Delivered: June 27, 2019

23